**Mark D. WHITEHEAD; H.D. Whitehead; and Jean D. Whitehead, Plaintiffs–Respondents–Petitioners,**

v.

**TOYOTA MOTOR CORPORATION; Toyota Motor Sales, U.S.A., Inc.; and Toyota Motor Distributors, Inc., Defendants–Petitioners–Respondents.**

Supreme Court of Tennessee, at Nashville.

May 1, 1995.

Fred C. Dance, Dance, Dance & Lane, Nashville, for plaintiffs.

Dennis J. Meaker and Winston S. Evans, Evans, Jones & Reynolds, Nashville, for amicus curiae.

John A. McReynolds, Jr., Baker, McReynolds, Byrne, Brackett, O'Kane & Shea, Knoxville, for defendants.

T. Harold Pinkley and Wynne C. Hall, Paine, Swiney & Tarwater, Knoxville, for amicus curiae.

DROWOTA, Justice.

### QUESTIONS CERTIFIED

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee, this Court has accepted two questions certified to us by the United States District Court for the Eastern District of Tennessee. The questions are as follows:

1. Whether the affirmative defense of comparative fault can be raised in a products liability action based on strict liability in tort?

2. If the affirmative defense of comparative fault may be raised in a products liability action based upon strict liability in tort, is this defense applicable to an enhanced injury case where it is undisputed that the alleged defect in the defendant's product did not cause or contribute to the underlying accident?

For the following reasons, we answer each of these questions in the affirmative.

### FACTS AND PROCEDURAL BACKGROUND

This is a products liability action that arises from an accident that occurred on January 22, 1992. On that day Mark D. Whitehead, plaintiff, was injured when a 1988 Toyota pickup truck that he was driving crossed the center line of the road and collided head-on with a vehicle that was traveling in the opposite direction from Mr. Whitehead's pickup truck.

The plaintiffs sued the defendants, the manufacturer and seller of the truck, based on the plaintiffs' contention that Mark D. Whitehead's injuries were enhanced beyond those he would have received had the truck he was driving been more crashworthy. The plaintiffs specifically contend that the seatbelt system of the Toyota pickup truck was defective. See T.C.A. § 29–28–105. The defendants answered the complaint, maintaining that there were no defects in the truck. The defendants also asserted, *inter alia,* the affirmative defense of comparative fault.

The plaintiffs filed a motion for partial summary judgment in which they sought to have the U.S. District Court dismiss the defendants' affirmative defenses, including the defense of comparative fault. On June 24, 1994, the district court entered an order in which it granted the plaintiffs' motion for partial summary judgment and dismissed all of the defendants' affirmative defenses, including the defense of comparative fault. With respect to the defense of comparative fault, the district court stated that " . . . the Court will not charge comparative fault in this case. It will abide by its earlier decisions that the comparative fault defense is not applicable to an action based on strict liability in tort."

The defendants then filed a motion in the district court in which they sought an interlocutory appeal on the comparative fault issue. The court granted the defendants' motion for an interlocutory appeal, stating as follows:

This Court amends its Order of June 24, 1994, insofar as it dismissed the affirmative defense of comparative fault in this products liability action, to find that it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation.

The district court then certified to this Court the first question listed above; and we accepted the question by an order dated August 19, 1994. Pursuant to a motion filed by the plaintiffs, the district court amended its first certification order to add the second question listed above. We entered an order on September 22, 1994, accepting certification of the second question. After briefing of the issues by the parties and by amicus curiae, we set this case for oral argument to be heard on February 6, 1995, in Nashville.

### FIRST CERTIFIED QUESTION

On May 4, 1992, this Court decided *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992), in which we adopted a system of modified comparative fault. We described the system as follows:

> We therefore hold that so long as a plaintiff's negligence remains less than a defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.

833 S.W.2d at 57.

After setting forth our holding, we acknowledged that the decision would drastically transform the law in Tennessee by stating that "[w]e recognize that today's decision affects numerous legal principles surrounding tort litigation. For the most part, harmonizing these principles with comparative fault must await another day." 833 S.W.2d at 57. However, we believed that such changes were justified in order to achieve a system that more closely links liability and fault.

Since our decision in *McIntyre,* we have consistently applied the doctrine of comparative fault to other legal principles. In *Perez v. McConkey,* 872 S.W.2d 897 (Tenn.1994), we held that the doctrine of secondary implied assumption of risk should not be retained as a separate defense but that, "[t]he reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault." 872 S.W.2d at 905. In *Bervoets v. Harde Ralls Pontiac–Olds, Inc.,* 891 S.W.2d 905 (Tenn. 1994), we held that the remedy of contribu-

tion was not abolished by *McIntyre* and that actions for contribution should be tried in accordance with the principles of comparative fault. We continued to integrate our system of comparative fault into Tennessee law in *Eaton v. McLain,* 891 S.W.2d 587 (Tenn. 1994), where we set forth a general set of guidelines to assist trial courts and juries in their duties of apportioning fault. And in *Volz v. Ledes,* 895 S.W.2d 677 (Tenn.1995), we confirmed that the doctrine of joint and several liability had been rendered obsolete by our decision in *McIntyre,* reasoning as follows:

> We believe that a system wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault is the system that best achieves our stated goal in *McIntyre v. Balentine* of linking liability and fault. In keeping with this goal, we decline to adopt a rule comparable to the rule under the Uniform Comparative Fault Act pursuant to which the liability of a given defendant is enhanced beyond that defendant's percentage of fault if another culpable defendant is insolvent. We do not believe that the goal of linking liability with fault is furthered by a rule that allows a particular defendant's liability to be determined by the happenstance of the financial wherewithal of other defendants.

895 S.W.2d at 680.

### *Post–McIntyre Federal Cases Dealing with Strict Liability and Tennessee's System of Comparative Fault*

With this background in mind, we now turn to the decisions of two federal courts which have considered the issue of whether the doctrine of comparative fault as enunciated in *McIntyre* applies in strict liability actions. These two decisions have yielded conflicting results.

In *McKinnie v. Ludell Manufacturing Co., Inc.,* 825 F.Supp. 834 (W.D.Tenn.1993), the U.S. District Court for the Western District of Tennessee (Judge James D. Todd) held that comparative fault does apply to products liability actions based on strict liability. In reaching this conclusion, the district court focussed on this Court's emphasis on "fault" in *McIntyre.* The court stated as follows:

The *McIntyre* court's definition of *liability based on 'fault' rather than 'negligence'* addresses the Tennessee Supreme Court's earlier concerns about interposing the plaintiff's negligence as a defense to 'conduct which is culpable regardless of the care exercised by the defendant.' *See Ellithrope*, 503 S.W.2d at 521. Emphasizing 'fault' rather than 'negligence' appears to have been a conscious decision of the *McIntyre* court. *McIntyre*, 833 S.W.2d at 56. *Negligence implies a breach of a duty of care,* while *fault refers merely to an act imposing liability. See e.g., Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 209 (Tenn.Ct.App.1984) (recognizing that 'fault' refers to a broader scope of conduct than 'negligence'). The comparative fault system's focus on the party's relative 'fault' avoids the 'apples and oranges' argument which contends that a plaintiff's negligence cannot be effectively compared to a manufacturer's conduct in producing a defective product because strict liability is not predicated on a breach of any duty of care. *See* Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee,* 57 Tenn.L.Rev. 199, 295 (1990); Jerry J. Phillips, *The Case for Judicial Adoption of Comparative Negligence in South Carolina,* 32 S.C.L.Rev. 295, 299 (1980); 1 *Comparative Negligence: Law and Practice* Section 9.30[4] (Matthew Bender 1993); Dan B. Dobbs et al, *Prosser and Keeton on the Law on Torts* Section 67, at 478 (5th Ed.1984 and Supp.1988). *Unlike a negligence-based system, which limits liability to the narrow basis of a party's breach of a duty of care, the fault-based system adopted by the McIntyre court allows the fact-finder to weigh the relative conduct of the parties. See e.g.* Uniform Comparative Fault Act § 1(b) cmt., 12 U.L.A. 46 (West Supp.1993) ('Putting out a product that is dangerous to the user or the public ... involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.').

825 F.Supp. at 838–839. (Emphasis added.)

The district court concluded its analysis by stating that:

Given the Tennessee Supreme Court's focus on 'fault' as the basis for liability and its reliance on the practices followed in other jurisdictions, this Court concludes that the Tennessee Supreme Court would follow the numerous other jurisdictions that have extended comparative fault to strict liability. Accordingly, the Court rules that, in light of the recent changes wrought by the Supreme Court of Tennessee, the defense of comparative fault could succeed against the claim asserted—strict products liability—by means of reducing Defendant's liability by the proportion of fault attributable to Plaintiff or third parties.

825 F.Supp. at 840–841.

In *Roberts v. Sears, Roebuck & Co.,* 834 F.Supp. 987 (E.D.Tenn.1993), however, the U.S. District Court for the Eastern District of Tennessee (Judge Thomas G. Hull, the certifying Judge in this case) reached the opposite result from that announced in *McKinnie.* The district court supported its conclusion by reasoning that:

In regard to Tennessee law, although there is a products liability statute, comparative fault has been solely implemented by a body of common law which consists of essentially only two Tennessee Supreme Court cases, although other Tennessee state and federal courts have utilized principles of comparative fault in various factual situations. Therefore, what other jurisdictions have concluded in regard to the interplay of a comparative fault statute with a products liability statute is dissimilar to the situation at bar. In this case, the Court has been asked to modify a large body of common law existing over many years which construes a statute, not by a modification dictated by another statute, but by extending a limited body of common law which overall does not address the issue before this Court.

Based upon the foregoing, this Court declines to extend Tennessee common law principles of comparative fault to statutory actions in strict liability due to the absence

of any authoritative Tennessee interpretation to the contrary, due to the Tennessee Supreme Court's recognition of the theoretical distinction of the two theories, and due to the limited language of the holding of *McIntyre* itself.

834 F.Supp. at 989.

Before we are able to determine which of these opposing positions is correct, and, therefore, to answer the first question certified to us by the federal district court, we must first examine two crucial areas: (1) the strict liability law in Tennessee before *McIntyre* was decided; and (2) how other jurisdictions have handled this question.

### Strict Liability Law in Tennessee

In *Ford Motor Company v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966), a case that was disposed of in favor of the plaintiff based on a manufacturer's misrepresentations regarding its product, this Court approved the theory of strict liability as expressed in Section 402A of the *Restatement (Second) of Torts.*[1] The Court's decision in that case was closely followed by our decision in *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967), in which we stated as follows:

> We recognize that strict liability exists upon the manufacturer of a product *without fault on his part,* under the circumstances outlined in 2 *Restatement, Second, Torts* § 402-A (1965). This result was foreshadowed by the opinion of this Court in the case of *Ford Motor Company v. Lonon,* Tenn., [217 Tenn. 400] 398 S.W.2d 240 (1966). This is a development in the law of torts which seems justified where the conditions specified in the Restatement are established by proof.

418 S.W.2d at 431 (emphasis added).

Our statement in *Olney* that strict liability could be imposed on the manufacturer of a product "without fault on his part," was, however, subsequently modified by *Ford Motor Company v. Eads,* 224 Tenn. 473, 457 S.W.2d 28 (1970), where we stated that such liability could be imposed *"without proof of negligence* on [the manufacturer's] part." 457 S.W.2d at 30 (emphasis added). Moreover, in *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516 (Tenn.1973), we again recognized that the concept of fault is inherent in the doctrine of strict products liability.

In *Ellithorpe,* we began our analysis by setting forth the elements of the doctrine of strict liability in tort:

> Tennessee has adopted the strict liability rule set forth in *Restatement (Second) of Torts,* Sec. 402A [1965].... The text of Section 402A is:
>
> 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

503 S.W.2d at 519 (citations omitted).

The *Ellithorpe* court then noted that contributory negligence does not serve as a defense in a strict liability action. However, we did recognize that "assumption of risk" is a proper defense in such cases. We explained the reasons for this distinction as follows:

> Ordinary negligence, defined generally as the failure to exercise the care of a reasonably prudent man, is not a proper defense to strict liability actions....
>
> The reasons for this rule are two-fold.
>
> First, allowing ordinary negligence to bar strict liability would defeat the purposes for which the theory of strict liability was created.... The manufacturer is held strictly liable because he can more easily spread the risk of loss caused by his products, and because to do so encourages him

---

**1.** *Lonon* was overruled on other grounds by *First Nat. Bank of Louisville v. Brooks Farms,* 821 S.W.2d 925, 929, 931 (Tenn.1991).

to take greater care in designing and manufacturing his products....

Second, Tennessee courts have never allowed contributory negligence as a defense to conduct amounting to gross negligence, or to *conduct which is culpable regardless of the care exercised by the defendant.* Generally, a plaintiff whose ordinary negligence proximately causes the injury cannot recover from an ordinarily negligent defendant ... However, ordinary negligence on the part of the plaintiff is not a defense to the gross negligence of the defendant ... In general, recovery is not barred whenever the defendant's negligence is of a 'higher degree' than that of the plaintiff ...

The conduct giving rise to strict products liability is likewise not based upon negligence, and the defendant may be liable without proof of a lack of care. *Restatement (Second) of Torts,* Sec. 402A, comment m at 355. Thus, the Restatement, at comment m to Sec. 402A states that strict products liability is 'similar in nature' to the absolute liability imposed upon defendants who conduct ultra hazardous or abnormally dangerous activities or who harbor dangerous animals ... Such activities are generally not excusable on the basis of a plaintiff's ordinary contributory negligence ... Contributory negligence is not available as a defense to those types of conduct which are not based on negligence; for the same reasons, we think it should not be available to defendants in cases where strict products liability is imposed.

503 S.W.2d at 521–522 (emphasis added) (citations omitted).

Therefore, it is apparent that the *Ellithorpe* court found that "one who sells any product in a defective condition unreasonably dangerous" is thereby engaging in "conduct which is culpable." The Court likened the distribution of a product that is in a "defective condition unreasonably dangerous" to "ultra hazardous or abnormally dangerous activities" or to the harboring of dangerous animals. Thus, while recognizing that strict products liability is not necessarily based upon a defendant's negligence, the *Ellithorpe* court acknowledged that the conduct that leads to liability based on a strict products liability theory does involve "fault," as that word is commonly understood. This acknowledgement represented a clear departure from the earlier statement in *Olney* that a manufacturer of a defective product could be held liable "without fault on his part."

In 1978 the Tennessee General Assembly enacted the Tennessee Products Liability Act of 1978. This legislation is currently codified at T.C.A. §§ 29–28–101, *et seq.* Under this act, a "product liability action" is defined to include:

All actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or under any other substantive legal theory in tort or contract whatsoever.

T.C.A. § 29–28–102(6).

The key operative provision of the Act is T.C.A. § 29–28–105(a), which provides as follows:

A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a *defective condition* or *unreasonably dangerous* at the time it left the control of the manufacturer or seller.

(Emphasis added.)

Furthermore, "defective condition" is defined in T.C.A. § 29–28–102(2) *to* mean "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." And the term "unreasonably dangerous" is defined in T.C.A. § 29–28–102(8) as follows:

'Unreasonably dangerous' means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchasers it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller

assuming he knew of its dangerous condition.

Finally, T.C.A. § 29–28–106(b) provides as follows:

No product liability action as defined in Section 29–28–102(6), when *based on the doctrine of strict liability in tort* shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

(emphasis added.)

Although the parties argue otherwise, we believe that the provisions of the Tennessee Products Liability Act of 1978 do not control the issues before us.

### Application of Comparative Fault to Strict Liability in Other States

Courts in a majority of states that have considered the issue of whether comparative fault should apply in products liability actions based on strict liability in tort have decided that comparative fault should apply in such cases. A leading case is *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976). In *Butaud,* the Supreme Court of Alaska explained the application of comparative fault to strict liability as follows:

The defendant is strictly liable due to the existence of a defective condition in the product. On the other hand, the plaintiff's liability attaches as a result of his conduct in using the product. It is appropriate, therefore, that the parties' contribution to the injury be apportioned. The defendant is strictly liable for the harm caused from his defective product, except that the award of damages shall be reduced in proportion to the plaintiff's contribution to his injury.

The comparative negligence defense would be applied in the same manner as in any negligence case, with the major difference being that in products liability cases it would not be necessary to prove that a defect was caused by negligence. It is not anticipated that the trier of fact will have serious difficulties in setting the percentage that the damages would be reduced as a result of the comparative negligence of the plaintiff. Further, it would be anomalous in a products liability case to have damages mitigated if the plaintiff sues in negligence, but allow him to recover full damages if he sues in strict liability, particularly where the complaint contains alternate counts for recovery in negligence, strict liability, and/or breach of warranty.

555 P.2d at 45–46.

Another leading case dealing with the application of comparative fault to strict liability is *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). In that case the Supreme Court of California stated as follows:

"Those counseling against the recognition of comparative fault principles in strict products liability cases vigorously stress, perhaps equally, not only the conceptual, but also the semantic difficulties incident to such a course. The task of merging the two concepts is said to be impossible, that 'apples and oranges' cannot be compared, that 'oil and water' do not mix, and that strict liability, which is not founded on negligence or fault, is inhospitable to comparative principles. The syllogism runs, contributory negligence was only a defense to negligence, comparative negligence only affects contributory negligence, therefore comparative negligence cannot be a defense to strict liability.... While fully recognizing the theoretical and semantic distinctions between the twin principles of strict products liability and traditional negligence, we think they can be blended or accommodated.

. . . . .

Given all of the foregoing, we are ... disinclined to resolve the important issue before us by the simple expedient of matching linguistic labels which have

evolved either for convenience or by custom. Rather, we consider it more useful to examine the foundational reasons underlying the creation of strict products liability in California to ascertain whether the purposes of the doctrine would be defeated or diluted by adoption of comparative principles. We imposed strict liability against the manufacturer and in favor of the user or consumer in order to relieve injured consumers 'from *problems of proof* inherent in pursuing negligence ... and warranty ... remedies ...' As we have noted, we sought to place the burden of loss on manufacturers rather than 'injured persons *who are powerless to protect themselves.*'

The foregoing goals, we think, will not be frustrated by the adoption of comparative principles. Plaintiffs will continue to be relieved of proving that the manufacturer or distributor was negligent in the production, design, or dissemination of the article in question. Defendant's liability for injuries caused by a defective product remains strict. The principle of protecting the defenseless is likewise preserved, for plaintiffs recovery will be reduced *only* to the extent that his own lack of reasonable care contributed to his injury. The cost of compensating the victim of a defective product, albeit proportionately reduced, remains on defendant manufacturer, and will, through him, be 'spread among society.' However, we do not permit plaintiff's own conduct relative to the product to escape unexamined, and as to that share of plaintiff's damages which flows from his own fault we discern no reason of policy why it should ... be born by others. Such a result would directly contravene the principle announced in *Li*, that loss should be assessed equitably in proportion to fault."

144 Cal.Rptr. 380, at 385–387, 575 P.2d 1162, at 1167–1169. (emphasis in original.)

In *Suter v. San Angelo Foundry & Machine Co.*, 81 N.J. 150, 406 A.2d 140 (1979), the Supreme Court of New Jersey determined that New Jersey's comparative negli-

gence statute should apply to strict liability actions.[2] In the course of making this determination, the *Suter* court stated as follows:

Dean Prosser has elucidated this idea of fault in the following manner:

There is a broader sense in which 'fault' means nothing more than a departure from a standard of conduct required of a man by society for the protection of his neighbors; and if the departure is an innocent one, and the defendant cannot help it, it is none the less a departure, and a social wrong. The distinction still remains between the man who has deviated from the standard, and the man who has not. The defendant may not be to blame for being out of line with what society requires of him, but he is none the less out of line [*Prosser, Torts,* Section 75, at 493].

So viewed, the notion of fault is readily seen to be inherent in the concept of strict liability. The manufacturer or supplier of a chattel has been charged with the duty of distributing a product which is fit, suitable and duly safe. Failure to comply with this standard constitutes fault.

406 A.2d at 146.

An overwhelming majority of states have adopted the view that comparative fault should apply to products liability actions based on strict liability. *See Elliot v. Sears, Roebuck and Co.*, 229 Conn. 500, 642 A.2d 709 (1994); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976); *Kanecko v. Hilo Coast Processing*, 65 Haw. 447, 654 P.2d 343 (1982); *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 726 P.2d 648 (1985); *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 73 Ill. Dec. 337, 454 N.E.2d 197 (1983); *Forsythe v. Coats Co.*, 230 Kan. 553, 639 P.2d 43 (1982); *Bell v. Jet Wheel Blast*, 462 So.2d 166 (La. 1985); *Austin v. Raybestos–Manhattan, Inc.*, 471 A.2d 280 (Me.1984); *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 418 N.W.2d 650 (1988); *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346 (Minn. 1981); *Thibault v. Sears, Roebuck Company*, 118 N.H. 802, 395 A.2d 843 (1978); *Jaramillo*

---

**2.** *Suter* has since been superseded by statute. *See Dewey v. R.J. Reynolds Tobacco Co.*, 121 N.J. 69, 577 A.2d 1239 (1990).

v. Fisher Controls Co., Inc., 102 N.M. 614, 698 P.2d 887 (App.1985); Day v. General Motors Corp. 345 N.W.2d 349 (N.D.1984); Sandford v. Chevrolet Division, 292 Or. 590, 642 P.2d 624 (1982); Fiske v. MacGregor, 464 A.2d 719 (R.I.1983); Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex.1984); Mulherin v. Ingersoll–Rand Co., 628 P.2d 1301 (Utah 1981); Lundberg v. All–Pure Chemical Co., 55 Wash.App. 181, 777 P.2d 15 (1989); Star Furniture Co. v. Pulaski Furniture Co., 171 W.Va. 79, 297 S.E.2d 854 (1982); Dippel v. Sciano, 37 Wis.2d 443, 155 N.W.2d 55 (1967); Keltner v. Ford Motor Co., 748 F.2d 1265 (8th Cir.1984) (based on Arkansas law); Trust Corp. of Montana v. Piper Aircraft Corp., 506 F.Supp. 1093 (D.Mont.1981) (based on Montana law). See Applicability of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort, 9 ALR 4th 633.

On the other hand, a minority of jurisdictions decline to apply comparative fault to strict liability actions. The minority view is expressed by the Supreme Court of South Dakota in Smith v. Smith, 278 N.W.2d 155 (S.D.1979), in which that court stated:

> Strict liability is an abandonment of the fault concept in product liability cases. No longer are damages to be borne by one who is culpable; rather they are borne by one who markets the defective product. The question of whether the manufacturer or seller is negligent is meaningless under such a concept; liability is imposed irrespective of his negligence or freedom from it. Even though the manufacturer or seller is able to prove beyond all doubt that the defect was not the result of his negligence, it would avail him nothing. We believe it is inconsistent to hold that the user's negligence is material when the seller's is not.

278 N.W.2d at 160.

Moreover, in Kinard v. Coats Company, Inc., 37 Colo.App. 555, 553 P.2d 835 (1976), the Colorado Court of Appeals stated the following rationale in support of the minority view:

Products liability under § 402A (of the Restatement (Second) of Torts) does not rest upon negligence principles, but rather is premised on the concept of enterprise liability for casting a defective product into the stream of commerce.... Thus, the focus is upon the nature of the product, and the consumer's reasonable expectations with regard to that product, rather than on the conduct either of the manufacturer or of the person injured because of the product.

553 P.2d at 837. (citations omitted.) [3]

Other decisions that express the minority view include Bowling v. Heil Co., 31 Ohio St.3d 277, 511 N.E.2d 373 (1987); Kirkland v. General Motors Corp., 521 P.2d 1353 (Okl. 1974); Phillips v. Duro–Lasting Roofing, Inc., 806 P.2d 834 (Wyo.1991).

It appears that many legal scholars agree with the majority position that comparative fault should apply to products liability actions based on strict liability in tort. See, e.g., Victor E. Schwartz, Comparative Negligence, 3d Ed., Section 11.2 (1994); Carol A. Mutter, Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee, 57 Tenn.L.Rev. 199, at 302 (1990); Grey Greenlee & Ann Rochelle, Comparative Negligence and Strict Tort Liability—A Marriage of Necessity, 18 Land & Water L.Rev. 643 (1983); Victor E. Schwartz, Strict Liability and Comparative Negligence, 42 Tenn. L.Rev. 171 (1974).

Most of the states which have a modified form of comparative fault, such as the one adopted by this Court in McIntyre, have concluded that the same type of modified comparative fault that applies generally should apply to strict liability actions. Included in the decisions that express this view are Forsythe v. Coats Co., 230 Kan. 553, 639 P.2d 43 (1982); Austin v. Raybestos–Manhattan, Inc., 471 A.2d 280 (Me.1984); Sandford v. Chevrolet Division, 292 Or. 590, 642 P.2d 624 (1982); Star Furniture Co. v. Pulaski Furniture Co., 171 W.Va. 79, 297 S.E.2d 854 (1982).

---

**3.** Kinard has since been superseded by statute. See Huffman v. Caterpillar Tractor Co., 908 F.2d 1470 (10th Cir.1990).

A minority of jurisdictions that otherwise apply a form of modified comparative fault apply pure comparative fault to strict liability actions. *See e.g., Hao v. Owens–Illinois, Inc.,* 69 Haw. 231, 738 P.2d 416 (1987).

## CONCLUSION

In light of the foregoing discussion, our answer to the first question certified to us is that comparative fault principles do apply in products liability actions based on strict liability in tort.

The conduct that leads to strict products liability involves fault, as the word "fault" is commonly understood. *See generally* William C. Powers, *The Persistence of Fault in Products Liability,* 61 Tex.L.Rev. 777 (1983). In keeping with the principle of linking liability with fault, a plaintiff's ability to recover in a strict products liability case should not be unaffected by the extent to which his injuries result from his own fault.

Two principal reasons for the adoption of the doctrine of strict products liability in Tennessee and elsewhere were (1) to encourage greater care in the manufacture of products that are distributed to the public, and (2) to relieve injured consumers from the burden of proving negligence on a manufacturer's part. Our decision today does not weaken these principles. The incentive to exercise care in manufacturing is maintained because manufacturers remain liable for distributing defective products, even though the amount of such liability is determined, in part, by the extent to which a consumer's own fault causes his injuries. There is still no requirement that negligence on the part of a manufacturer be proved, only that the manufacturer distributed a defective or unreasonably dangerous product.

The same form of modified comparative fault that we adopted in *McIntyre,* under which a plaintiff can recover as long as his fault is less than that of the defendant with recovery being reduced in proportion to the plaintiff's fault, will apply to strict products liability actions. The triers of fact will determine the percentage of a plaintiff's damages that is attributable to the defective or unreasonably dangerous product as well as the percentage that is attributable to the plaintiff's own fault.

## SECOND CERTIFIED QUESTION

■ The second certified question from the U.S. District Court for the Eastern District is:

If the affirmative defense of comparative fault may be raised in a products liability action based upon strict liability in tort, is this defense applicable to an enhanced injury case where it is undisputed that the alleged defect in the defendant's product did not cause or contribute to the underlying accident?

The majority view among jurisdictions that have considered this question is that comparative fault should be applied to such an enhanced injury case. Representative of the majority view is the decision of the Supreme Court of North Dakota in *Day v. General Motors Corporation,* 345 N.W.2d 349 (N.D. 1984). In that case, the Supreme Court of North Dakota answered questions that had been certified to it by the U.S. District Court for the District of North Dakota. These questions included the following:

1. In a personal injury action against the manufacturer of a product wherein the plaintiff is seeking damages under a theory of strict liability based on an alleged design defect which plaintiff claims enhanced the injury, should plaintiff's percentage of fault be determined and applied so as to reduce or, as the case may be, defeat plaintiff's recovery?

2. If plaintiff's percentage of fault is relevant, should the determination include both plaintiff's accident producing fault and injury enhancing fault so as to reduce or, as the case may be, defeat plaintiff's recovery?

345 N.W.2d at 351.

The *Day* court answered both of the foregoing questions in the affirmative, stating that "we agree that the ultimate objective of comparing negligence in a products liability case is to apportion, on a percentage basis, all causes of the mishap resulting in damages." 345 N.W.2d at 354.

The majority view is based on the belief that the fault of the defendant and of the

plaintiff should be compared with each other with respect to all damages and injuries for which the conduct of each party is a cause in fact and a proximate cause. Other decisions expressing the majority view that comparative fault should be applied in enhanced injury products liability cases include *Doupnik v. General Motors Corporation,* 275 Cal.Rpt. 715, 225 Cal.App.3d 849 (3rd Dist.1990); *Dahl v. BMW,* 304 Or. 558, 748 P.2d 77 (Or.1987); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984); *Austin v. Ford Motor Co.,* 86 Wis.2d 628, 273 N.W.2d 233 (1979); *Keltner v. Ford Motor Co.,* 748 F.2d 1265 (8th Cir.1984) (based on Arkansas law); *Huffman v. Caterpillar Tractor Co.,* 645 F.Supp. 909 (D.Colo.1986) (based on Colorado law); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 506 F.Supp. 1093 (D.Mont. 1981) (based on Montana law); *Hinkamp v. American Motors Corp.,* 735 F.Supp. 176 (E.D.N.C.1989) (based on North Carolina law). Most legal scholars prefer the view that comparative fault should be applied to a claim for enhanced injuries. *See e.g.,* Victor E. Schwartz, *Comparative Negligence,* 3d Ed. Section 11–5(a) (1994).

The opposing minority view is exemplified by *Reed v. Chrysler Corp.,* 494 N.W.2d 224 (Iowa 1992), in which the Supreme Court of Iowa, in reversing an earlier decision in *Hillrichs v. Avco Corp.,* 478 N.W.2d 70 (Iowa 1991), held that a plaintiff's initial negligence in causing an accident should not be considered in apportioning damages based on injuries that are enhanced as a result of a defective product. In reaching this conclusion, the *Reed* court stated:

> In adopting the crashworthiness doctrine in *Hillrichs,* we indicated a contrary view, stating that the plaintiff's comparative fault could be assessed against him in a claim for enhanced injuries. 478 N.W.2d at 76. On reconsideration, for the reasons just stated, we think a plaintiff's comparative fault should not be so assessed in a crashworthiness case unless it is shown to be a proximate cause of the *enhanced* injury.

494 N.W.2d at 230 (emphasis in original).

Thus, implicit in the *Reed* court's holding is the premise that a plaintiff's initial negli-

gence in causing an accident is not a proximate cause of his enhanced injuries.

Other decisions representing the minority view that comparative fault principles should not apply to enhanced injury cases include *Andrews v. Harley Davidson, Inc.,* 106 Nev. 533, 796 P.2d 1092 (Nev.1990); *Cota v. Harley Davidson,* 141 Ariz. 7, 684 P.2d 888 (Ariz. App.1984).

### CONCLUSION

In light of the foregoing discussion, our response to the second question certified to us is that comparative fault principles will apply to enhanced injury cases in which the defective product does not cause or contribute to the underlying accident. The respective fault of the manufacturer and of the consumer should be compared with each other with respect to all damages and injuries for which the fault of each is a cause in fact and a proximate cause. The percentages of fault for such damages will be assigned in accordance with the principles discussed in *Eaton, supra.*

Our response is partially based on the fact that having answered the first question in the affirmative, we believe that it would be illogical to answer this question in the negative. Any claim for "enhanced injuries" is nothing more than a claim for injuries that were *actually and proximately caused* by the defective product. For example, suppose that a plaintiff is driving a car and is involved in a two-car accident, for which plaintiff is entirely at fault; suppose further that plaintiff incurs $100,000 in damages as a result of this accident. Even though plaintiff's fault precludes him from recovering from the other driver, plaintiff brings an action against the manufacturer of the car, alleging that the seat belt system is defective. Plaintiff alleges that if the seat belt system had been properly designed and installed, he would have only suffered $50,000 in damages.

This type of claim is often characterized as one for "enhanced injuries." The name given to the action has no real significance, however, because it merely represents the portion of the *total damages for which the manufacturer is potentially liable;* it is the "products

liability" component of the suit. (The manufacturer could not be liable for the first $50,000 in damages, which would have been incurred even if the seat belt had been properly manufactured and installed). Therefore, it is illogical to hold that comparative fault applies to products liability actions generally, but does not apply to "enhanced injury" claims. The questions are, in reality, the same.

To conclude generally, comparative fault in strict products liability actions, as in other actions, constitutes an affirmative defense under Rule 8.03 of the Tennessee Rules of Civil Procedure.

One of the parties who has filed an amicus brief in this matter has invited us to address issues other than the two questions that have been certified in this matter. We decline to do so because these issues are not properly before us.

The Clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed equally between the Plaintiffs and the Defendants.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.