IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 9, 2024 Session

## SARAH ELIZABETH WOODRUFF EX REL. ETHAN WOODRUFF, ET AL. V. FORD MOTOR COMPANY, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-486-14     William T. Ailor, Judge**

---

### No. E2023-00488-COA-R3-CV

---

After a tragic motor vehicle accident caused her husband's death and her minor child's serious injuries, the plaintiff filed this products liability action against several manufacturers and sellers. The plaintiff appeals from the trial court's order granting summary judgment in favor of Dorel Juvenile Group, Inc., a booster seat manufacturer. Based on the Tennessee Supreme Court's majority opinion in *Carolyn Coffman, et al. v. Armstrong International, Inc., et al.*, 615 S.W.3d 888 (Tenn. 2021), and the relevant provisions of the Tennessee Products Liability Act, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Richard Everett Collins, II, and Dan Channing Stanley, Knoxville, Tennessee, for the appellant, Sarah Elizabeth Woodruff.

Charles Gavin Shepherd and Hugh Buchanan Bright, Knoxville, Tennessee, and Jonathan Judge, Chicago, Illinois, for the appellee, Dorel Juvenile Group, Inc.

## OPINION

## I. BACKGROUND

On August 23, 2013, there was a car accident claiming as victims the family of Plaintiff-Appellant Sarah Elizabeth Woodruff ("Plaintiff"). The recidivous,[1] speeding, intoxicated driver, Scott Spangler, crashed his car head-on into the 2012 Nissan Juke driven by Plaintiff's husband, Benjamin Woodruff, causing it to spin into the path of a minivan, which hit the Nissan on the driver's side, killing Mr. Woodruff. Plaintiff's two children were in the backseat. The older child, Ethan, was six years old at the time. His sister, Kate, was then four years old. When the collision began, Ethan was seated on the passenger side of the Juke, in the forward-facing Pronto Belt-Positioning Booster Seat manufactured by Defendant-Appellee Dorel Juvenile Group, Inc. ("Dorel"). Kate was seated behind her father on the driver's side and was buckled into a forward-facing child seat with a five-point harness. Kate sustained minor physical injuries, but has undergone treatment to help with flashbacks. Sadly, Ethan sustained a traumatic brain injury, a laceration, and multiple fractures. Ethan has undergone rehabilitation in the years following the tragedy. Plaintiff alleges that he will need caregivers for the rest of his life.

Plaintiff filed this products liability action on July 25, 2014. Plaintiff was permitted to amend her complaint several times. She sued the driver; Ford Motor Company ("Ford"); Seatbelt Extender Pros, LLC; Autoliv Safety Technology, Inc.; Travelers Personal Security Insurance Company; and Dorel.[2] Travelers was dismissed from the action by agreed order entered April 9, 2018. The trial court approved Plaintiff's settlement with Autoliv in June of 2018. Plaintiff has resolved her claims against Seat Belt Extender Pros, LLC. The operative fourth amended complaint was filed in 2019.

Before the accident, on March 13, 2013, Mr. Woodruff purchased from former defendant Seat Belt Extender Pros via eBay a seat belt extender to use in his Nissan Juke. The extender he received was branded Ford, labeled as a Ford genuine part, and included a Ford service part number. The seat belt extender at issue was designed for use in the front seats of certain generations of the Ford Focus vehicle. Former defendant Autoliv was Ford's component and subcomponent parts supplier. The components included the seat belt extender's buckle, tongue, and webbing. Autoliv produced this Ford Focus seat belt extender and developed the warning label on the extender for Ford, at Ford's direction. Ford's regular seat belts have enough webbing to fit around a 400-pound human, so Ford's seat belt extender is intended for very large adults. The extender works by clicking into the male and female ends of the vehicle's existing buckle, providing more webbing to fit

---

[1] Mr. Spangler had multiple prior convictions for driving under the influence.

[2] Plaintiff named Dorel as a defendant in the third amended complaint filed on January 11, 2018.

around a person of such size. It is undisputed that the webbing, latch plate, and buckle of the subject seat belt extender met Federal Motor Vehicle Safety Standards regulations.[3]

Ethan, of course, did not physically require a seat belt extender to be buckled into his Dorel booster seat, as Plaintiff, one of her experts, and David Prentkowski agreed in their respective depositions.[4] Dorel did not advertise its booster seat with a seat belt extender. The Dorel booster seat was evaluated by the National Highway Traffic Safety Administration and was found to comply with all applicable federal safety standards.[5] Before Mr. Woodruff purchased the seat belt extender, the standard seat belt in the Nissan Juke was used to buckle in Ethan and provide the needed restraint when he rode in the booster seat. The Juke's standard seat belt was long enough to do so. The standard backseat buckle in the Woodruffs' 2012 Nissan Juke was recessed, so Mr. Woodruff purchased the seat belt extender in an effort to make it easier to buckle in Ethan or for Ethan to buckle himself in when he was riding in the booster seat. After purchasing the Ford seat belt extender, the Woodruffs used it to connect Ethan's booster seat to the Nissan Juke's backseat seat belt restraint system.

The fourth amended complaint specifically alleges that Seat Belt Extender Pros intentionally misrepresented that the seat belt extender it sold to Mr. Woodruff could safely be used with child restraint devices such as booster seats. It absolutely could not, as the record establishes. At the time of his 2018 deposition, Plaintiff's expert witness, Larry A. Sicher, was not aware of any specific guidance from the National Highway Traffic Safety Administration indicating that a seat belt extender should not be used with a booster seat. However, the parties agree that no known automaker intends for seat belt extenders to be used by or for children under any circumstance. Nissan prohibits the use of seat belt extenders with child restraints. Plaintiff further alleges that Seat Belt Extender Pros intentionally misrepresented to Mr. Woodruff "that a seat belt extender bearing the logo of an automobile manufacturer different from the manufacturer of the vehicle for which the seat belt extender is purchased for use will fit and function properly." Seat Belt Extender Pros has ceased marketing extenders for children's car seats or booster seats.

---

[3] Tennessee Code Annotated section 29-28-104(a) provides that:

Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

[4] David Prentkowski was a senior principal engineer within Autoliv's seat belt engineering group.

[5] *See* Tenn. Code Ann. § 29-28-104(a), *supra* note 3.

In the fourth amended complaint, Plaintiff alleges that Dorel's booster seat provided "insufficient warnings" that the use of a seat belt extender was inherently dangerous; that Dorel knew or should have known "that seat belt extenders should never be used in conjunction with child safety restraint systems and children;" that Dorel "should absolutely have warned of the inherent risks associated with the use of seat belt extenders with child safety restraint systems and children and [Dorel] never should have instructed its consumers to obtain a seat belt extender in the event the belt was too short." Plaintiff asserts that the booster seat was "in defective condition or unreasonably dangerous" at the time it left Dorel's control. Under her claim for punitive damages against Dorel, Plaintiff alleges that "Dorel, having conducted no safety testing or analysis, intentionally, recklessly, maliciously, and fraudulently instructed its customers to obtain a seat belt extender in the event the belt in their vehicle was too short." Before this lawsuit, Dorel was not aware that Seat Belt Extender Pros was marketing online the use of booster seats in conjunction with seat belt extenders, nor was it aware of any case where a seat belt extender was used with its Pronto booster seat.

*The Product Warnings and Instructions*

Plaintiff testified that she does not know whether the late Mr. Woodruff read the product warnings and instructions pertinent to this case. The Nissan Juke was primarily his vehicle. Mr. Woodruff did not contact any dealer about a seat belt extender and Plaintiff did not do so either. The 2012 Nissan Juke Owner's Manual instructs and warns as follows:

> SEAT BELT EXTENDERS
> If, because of body size or driving position, it is not possible to properly fit the lap-shoulder belt and fasten it, an extender that is compatible with the installed seat belts is available that can be purchased. The extender adds approximately 8 in (200 mm) of length and may be used for either the driver or front passenger seating position. See a NISSAN dealer for assistance with purchasing an extender if an extender is required.
>
> ! WARNING
> - Only NISSAN seat belt extenders made by the same company which made the original equipment seat belts, should be used with NISSAN seat belts.
> - Adults and children who can use the standard seat belt should not use an extender. Such unnecessary use could result in serious personal injury in the event of an accident.
> - Never use seat belt extenders to install child restraints. If the child restraint is not secured properly, the child could be seriously injured in a collision or a sudden stop.

The Dorel Pronto Belt-Positioning Booster Instruction Manual Eng. 4358-4376C was recovered after the accident.  It was attached to the bottom of the booster seat where the manual says to stow it after assembly.  The manual warns and instructs:

Read all instructions BEFORE USING this child restraint.

! IMPORTANT !
Failure to follow the warnings on the labels and in the instruction manual can result in the death or serious injury of your child.

Thank you for choosing this car seat, referred to throughout this manual as a child restraint.

! Do not substitute parts or try to modify the child restraint in any way.

! Use only the vehicle's lap and shoulder belt system when restraining the child in this booster seat.  Failure to do this can result in serious injury or death.

Check vehicle instructions for more information about air bag/child restraint use.

! Dorel Juvenile Group does not recommend the use of any child restraint accessories except those provided by DJG.

This booster MUST only be used with a lap/shoulder belt.

- If your vehicle belt is too short, contact your vehicle dealer for a seat belt extender.  Do not route the seat belt in any way except as shown in the instructions.

  Place lap belt across child's thighs.  Lock buckle.  NOTE: Make sure the lap and shoulder belt on the buckle side are placed under armrest [of the booster seat] as shown [in the accompanying pictogram number two on page 18].

When questioned by Dorel's counsel, Mr. Sicher agreed that if an occupant were seated in the subject booster seat, the addition of the Ford seat belt extender would cause the vehicle's lap and shoulder belts not to be underneath the booster seat's armrest as page 18 of the booster seat manual instructs in its language and pictogram number two.  Mr. Sicher explained the effect:

Q. Sure. The reason why the shoulder belt doesn't go all the way across his body is because the seat belt extender is going underneath the armrest [of the booster seat] and up onto his leg[,] right?

A. The seat belt extender has changed the geometry of the shoulder belt, therefore it's not engaging him in the way that it would normally engage.

Q. Right. If the lap and shoulder belt did extend all the way under the buckle side armrest, then Ethan would be – and assuming proper tension in the system, he would be getting the intended restraint from the lap shoulder belt; right?

A. Yes.

The label sewn on the actual Ford seat belt extender used with Ethan's booster seat states:

SEAT BELT EXTENDER WARNING
Do not use extender:
Unless it is physically required in order to wear the vehicle's safety belt.
If it causes the distance between the front edge of the extender buckle and the center of the occupant's body to be less than 6 inches.
Incorrect use of extender may result in serious injury. Use extender only to the vehicle and seation [sic] position it was provided for.
Remove and stow when not in use by the person it was provided for.

*Dorel's and Ford's Motions for Summary Judgment*

On November 5, 2019, the trial court granted summary judgment in Dorel's favor. On reconsideration, the trial court reversed course and set aside the ruling in Dorel's favor by order entered February 20, 2020. On March 19, 2020, Dorel moved for permission to file a Rule 9 interlocutory appeal to this Court from the February 20, 2020 order. Ford was unsuccessful on its motions for summary judgment filed earlier in the litigation on Plaintiff's previously-filed complaints.

Then, on January 4, 2021, the Tennessee Supreme Court issued *Carolyn Coffman, et al. v. Armstrong International, Inc., et al.*, 615 S.W.3d 888 (Tenn. 2021). *Coffman* was a products liability case filed by a husband and wife after the husband developed mesothelioma following alleged asbestos exposure in the workplace. *Coffman*, 615 S.W.3d at 891. *Coffman* concerned a group of defendants who were manufacturers of industrial

equipment and who were collectively referred to as the "Equipment Defendants" in the opinion. *Id*. at 892. Liability for the husband's illness was alleged against the Equipment Defendants "because he was exposed to asbestos while working with or near the Equipment Defendants' products, such as industrial valves, pumps, and steam traps." *Id*. The products at issue in *Coffman* "did not contain asbestos when they left the Equipment Defendants' control, but rather an end user integrated or used asbestos-containing materials with the Equipment Defendants' products after their final sale." *Id*. at 895. The "later-affixed asbestos-containing products were manufactured and sold by other entities with no involvement from the Equipment Defendants." *Id*. at 892. In their lawsuit, the husband and wife claimed that the Equipment Defendants were liable for the husband's illness "under a duty-to-warn theory because it was foreseeable, and even intended, that their equipment be repaired and maintained with asbestos-containing materials." *Id*. The plaintiffs contended that the integration of asbestos-containing insulation, packing, and gaskets into the Equipment Defendants' products caused the Equipment Defendants' products to become defective. *Id*. The Tennessee Supreme Court granted permission to appeal to determine whether "the Equipment Defendants had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others." *Id*. at 891. The Court examined "the plain language" of the Tennessee Products Liability Act, Tennessee Code Annotated sections 29-28-101 through -108, in making its determination. *Coffman*, 615 S.W.3d at 895. In a 4-1 decision, the majority of the Court held:

- "[T]hat the language of the TPLA and accompanying case law places a duty to warn on a manufacturer or seller to warn about the condition of the product only if it was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Id*. at 896.

- "[T]hat, under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others." *Id*. at 899.

- "[T]hat, under the language of the TPLA, the Equipment Defendants [could not] be held liable for injuries resulting from products they did not make, distribute, or sell." *Id*. at 900.

At the time the *Coffman* opinion was delivered, Dorel's motion to seek interlocutory appeal to this Court was pending in the trial court, so Dorel submitted *Coffman* as supplemental authority to that motion. Dorel argued that *Coffman* supported its previously asserted arguments that it had no duty to warn about the use of seat belt extenders with its booster seat. In the same vein, on February 3, 2021, Ford moved the trial court for relief from its previous unfavorable summary judgment orders and for entry of final judgment in its favor pursuant to Tennessee Rule of Civil Procedure 54.02. In its motion, Ford argued

that "the *Coffman* decision now makes clear that Ford, as a matter of law, had no duty to warn about any alleged dangers of using its seat belt extender in combination with another manufacturer's product, including Dorel's booster seat." Accordingly, Ford requested judgment in its favor on Plaintiff's failure to warn claim.

The trial court heard the pending motions on February 15, 2023. Ford's and Dorel's respective counsel presented arguments. During the hearing, Plaintiff's counsel argued that the language in Dorel's booster seat manual stating "if your vehicle belt is too short, contact your vehicle dealer for a seat belt extender" amounted to a misrepresentation by Dorel concerning its product. Plaintiff directed the trial court to Tennessee Pattern Jury Instruction 10.18. In its oral ruling, the trial court found that "TPI 10.18, with regard to misrepresentation of products, does not apply." The court reasoned:

> So in looking at TPI 10.18 and what the plaintiff must prove included in that list, among other things, is that the representation was not true and that the plaintiff knew of the representation but did not know it was untrue[;] the plaintiff justifiably relied on the representation by purchasing the product, using the product consistent with [the] representation; and the plaintiff's reliance on the representation was a substantial factor in causing the plaintiff's damages.

> There's no proof that the plaintiff in this case knew of the representation. There is no proof in this case that the plaintiff relied on the representation. As the Court recalls testimony from Ms. Woodruff, her testimony was that she never read the manual, and she does not believe that her husband read the manual.

By order entered March 6, 2023, the trial court found that the Tennessee Supreme Court's "express holding in *Coffman* is not limited to cases involving asbestos exposure or to products that require aftermarket integration, and the Supreme Court did not create any common law exceptions to this holding." The trial court read *Coffman* as a "reaffirm[ation] that a manufacturer is not liable for injuries resulting from products it did not make or sell and has no duty to warn with respect to such products." The trial court concluded that Dorel had no duty to warn about the seat belt extender that it did not manufacture or sell, directed that final judgment on all claims be entered in Dorel's favor, and dismissed it from the action. By order entered April 19, 2023, the trial court denied Ford's February 3, 2021 motion.

The case proceeded to trial against Ford on February 27, 2023, but ended in a mistrial. Ford then sought an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. We issued our opinion and entered judgment in the interlocutory appeal on

May 20, 2024.  *Sarah Elizabeth Woodruff v. Ford Motor Company*, No. E2023-00889-COA-R9-CV, 2024 WL 2270675 (Tenn. Ct. App. May 20, 2024).  Plaintiff now appeals from the final judgment entered in Dorel's favor.


## II.    ISSUES

We restate the issues Plaintiff raises on appeal as follows:

A. Whether the trial court erred in granting summary judgment in Dorel's favor based upon *Carolyn Coffman, et al. v. Armstrong International, Inc., et al.*, 615 S.W.3d 888 (Tenn. 2021).

B. Whether the trial court erred in granting summary judgment in Dorel's favor when considering Plaintiff's theory of product misrepresentation.

As Appellee, Dorel raises the following issues:

C. Whether Dorel is entitled to summary judgment based upon abnormal use of the booster seat at issue.

D. Whether Dorel is entitled to summary judgment based upon lack of proximate cause.


## III.    STANDARD OF REVIEW

"The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court."  *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993).  We review questions of law de novo with no presumption of correctness.  *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).  Likewise, we review issues of statutory construction de novo with no presumption of correctness attaching to the trial court's rulings.  *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04.

When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's

evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id*. at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted). Appellate review of a trial court's ruling granting a motion for summary judgment is de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citation omitted). Under the de novo standard of review, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id*. (citation omitted).

## IV.   DISCUSSION

### A.

By its language, the Tennessee Products Liability Act governs all claims stemming from injuries caused by products. Tenn. Code Ann. § 29-28-102(6).[6] The TPLA provides the statutory framework for bringing defective product claims against manufacturers and sellers and it "supersede[s] common law claims for personal injuries stemming from

---

[6] The TPLA defines "Product liability action" to include:

[A]ll actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, *warning*, instruction, marketing, packaging or labeling of any product. 'Product liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or *failure to discharge a duty to warn or instruct*, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

Tenn. Code Ann. § 29-28-102(6) (emphasis added).

alleged defects in products or failures to warn of the dangers associated with a product." *Coffman*, 615 S.W.3d at 895. The parties agree that the claims alleged in Plaintiff's operative fourth amended complaint are governed by the TPLA, including her claim that Dorel "should absolutely have warned of the inherent risks associated with the use of seat belt extenders with child safety restraint systems and children." On appeal, Plaintiff presses that *Coffman* is distinguishable due to "unique asbestos-related facts" and because that case did not involve a failure to warn against a dangerous misuse of the product. Dorel urges that summary judgment was proper because it had no duty to warn of a combination of its product with other products, particularly when the other products were being unreasonably used contrary to explicit warnings.

In examining how a defendant's "duty or liability" arises under the TPLA, our Supreme Court looked to section 29-28-105(a), which it termed "'[t]he key operative provision of the Act," and which states that a product must "be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Coffman*, 615 S.W.3d at 895 (quoting *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 689 (Tenn. 1995)). From this, the Court held that a manufacturer's duty to warn about the product's condition is triggered only when the product "was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Coffman*, 615 S.W.3d at 896.[7]

In *Coffman*, the plaintiffs argued that the Equipment Defendants' products were in a defective condition at the time they left the Equipment Defendants' control because they were designed to use asbestos-containing materials and provided no warnings about the dangers of asbestos. *Id.* In this case, Plaintiff argues that Dorel's booster seat was defective because its included instruction manual failed to adequately communicate the danger of using a seat belt extender with a booster seat. Throughout her pleadings about the danger that Dorel should have warned against, Plaintiff references other products, namely, seat belt extenders. However, as our Supreme Court recognized, the TPLA's provisions "link a defendant's liability to the defendant's own product, not the product of another manufacturer." *Id.* at 897. The *Coffman* majority was not persuaded that the Equipment Defendants' products were defective because they later were integrated with unsafe asbestos-containing replacement parts:

---

[7] "'Defective condition' means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption[.]" Tenn. Code Ann. § 29-28-102(2).

"'Unreasonably dangerous' means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." Tenn. Code Ann. § 29-28-102(8).

The very definition of 'defective condition' states that the product's condition 'renders *it* unsafe for normal or anticipatable handling and consumption.' Tenn. Code Ann. § 29-28-102(2). The "*it*" refers to the manufacturer's own product. In this case, the "*it*" is the Equipment Defendants' original product, not the Equipment Defendants' product plus some later-included asbestos-containing material.

*Id*. (emphasis in original). Dorel is not a seat belt extender manufacturer, nor did it make, design, or sell the Ford seat belt extender Ethan used. The record contains no allegation of a design defect or manufacturing defect as to Dorel's booster seat itself, *i.e.*, its own functionality. The booster seat complied with all applicable federal safety standards, which afforded it a rebuttable presumption that it was not in an unreasonably dangerous condition. *See* Tenn. Code Ann. § 29-28-104(a). Here, what made the booster seat unsafe and what created a dangerous condition was when the purchaser added, aftermarket and from a third party, a Ford seat belt extender made for the front seat of a Ford Focus, in violation of Nissan's explicit warning never to use a seat belt extender to install a child restraint. These circumstances are more attenuated than those under which the *Coffman* majority declined to impose a manufacturer's duty to warn under the TPLA.

Plaintiff isolates one of the many instructions in the booster seat manual — "If your vehicle belt is too short, contact your vehicle dealer for a seat belt extender" — and argues that, through such instruction, Dorel "encouraged" the misuse of the booster seat with a seat belt extender which, in turn, rendered the booster seat defective or unreasonably dangerous. We are not persuaded because the facts in the record do not support this argument. First, the instruction did not state that the booster seat required a seat belt extender to function or that it would have been safer with one. Rather, it instructed a consumer to speak to his dealer if the standard seat belt in his car was too short, which the Juke's was not. This instruction was similar to the one that the Nissan Juke manual included about seat belt extenders generally: "See a NISSAN dealer for assistance with purchasing an extender if an extender is required." Second, no one followed the instruction. Plaintiff testified that she does not know whether the late Mr. Woodruff read the product warnings and instructions pertinent to this case, and it is undisputed that neither Plaintiff nor Mr. Woodruff contacted any dealer about a seat belt extender. We conclude that the above instruction did not render Dorel's booster seat unreasonably dangerous or in a defective condition under the TPLA.

We also conclude that *Coffman*'s explicit holding that "under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others" applies to the facts of this action and to Plaintiff's theory of Dorel's liability. *Coffman*, 615 S.W.3d at 899. We do not read *Coffman*'s holdings to be limited to cases

- 12 -

about the post-sale integration of asbestos-laden component parts, as Plaintiff suggests. Based on *Coffman*'s guidance and the relevant TPLA provisions, we have determined that Dorel did not owe Plaintiff a legal duty to warn about another manufacturer's product under the circumstances of this case. The existence of a legal duty is an essential element of a failure to warn claim under the TPLA. Therefore, Dorel is entitled to summary judgment on Plaintiff's failure to warn claim asserted in her fourth amended complaint. We affirm the trial court's March 6, 2023 order.

B.

Pointing to the aforementioned instruction in the booster seat manual to "contact your vehicle dealer," Plaintiff asserts that "even if *Coffman* now means Dorel had no duty to warn in the first place, Dorel still materially misrepresented the safety of using seat belt extenders with the subject booster seat, which is a misuse of both products." However, the operative fourth amended complaint lacks any factual averment that Dorel made a misrepresentation, so it does not plead a theory of misrepresentation[8] under the TPLA against Dorel. By contrast, Plaintiff chose to specifically plead misrepresentation against Seat Belt Extender Pros in the fourth amended complaint under the heading Intentional Misrepresentation.[9] For example, Plaintiff alleged that Seat Belt Extender Pros: "intentionally represented and warranted that the seat belt extender at issue was safe to use with children and child booster seats;" "knew that seat belt extenders should never be used . . . to restrain a child in a booster seat;" "intentionally misrepresented to Benjamin Woodruff that a seat belt extender bearing the logo of an automobile manufacturer different from the manufacturer of the vehicle for which the seat belt extender is purchased for use will fit and function properly;" that "Benjamin Woodruff relied on these representations when using the seat belt extender at issue in conjunction with Ethan Woodruff's child booster seat;" and that "as a result of [Seat Belt Extender Pros'] representations and Benjamin Woodruff's reliance on same, Ethan Woodruff suffered the serious injuries . . . complained of herein."

"The pleadings required by the Tennessee Rules of Civil Procedure provide the vehicle for identifying and refining the matters at issue in a lawsuit. They provide the parties and the trial court with notice of the claims and defenses involved in the case." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001).

___

[8] *See* Tenn. Code Ann. § 29-28-102(6), *supra* note 6 ("Product liability action" includes actions based upon the theory of misrepresentation).

[9] The February 15, 2023 hearing transcript strongly implies that the misrepresentation theory of liability against Dorel came about late in the litigation. We note that Plaintiff was permitted to amend her complaint several times, including once after Dorel was named a defendant.

Generally, failure to timely assert a claim or defense "amount[s] to a waiver of the right to rely on the claim or defense at trial." *Castelli v. Lien*, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995). Likewise, "an unpled claim cannot be asserted for the first time on appeal." *Rawlings*, 78 S.W.3d at 300 (citations omitted). With these considerations in mind, we conclude that Dorel cannot now be held liable under the unpled theory that it misrepresented that seat belt extenders could be safely used with its Pronto booster seat.

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's March 6, 2023 order granting summary judgment on all claims in Dorel's favor. The alternative issues Dorel raised on appeal are pretermitted. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Sarah Elizabeth Woodruff.

_____
JOHN W. McCLARTY, JUDGE