IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 19, 2020 Session[1]


**CAROLYN COFFMAN, ET AL. V. ARMSTRONG INTERNATIONAL, INC.,
ET AL.**


**Appeal by Permission from the Court of Appeals
Circuit Court for Knox County
No. 2-485-14 William T. Ailor, Judge**

———————————————————————

**No. E2017-01985-SC-R11-CV**


———————————————————————


This is a product liability action stemming from occupational exposure to asbestos. Pertinent to this appeal, Mr. and Mrs. Coffman ("Appellees") asserted claims against the manufacturers of certain equipment ("Equipment Defendants") under the Tennessee Products Liability Act for failing to warn of dangers for exposure to asbestos-containing products that the Equipment Defendants did not themselves manufacture or sell. The trial court granted summary judgment to the Equipment Defendants and the Court of Appeals reversed. This Court granted the Equipment Defendants' application in part and directed the parties to address: "Whether the Court of Appeals erred in holding that the Equipment Defendants had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others."[2] We have concluded that the Equipment Defendants had no duty to warn on the facts and law applicable here. We reverse the judgment of the Court of Appeals and remand for further proceedings consistent with this opinion.

---

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

[2] All other applications for permission to appeal and additional issues raised in the parties' applications were denied.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed in Part; Judgment of the Trial Court Reinstated in Part. Case Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, and HOLLY KIRBY, JJ., joined. SHARON G. LEE, J. filed a separate dissenting opinion.

Michael J. King, John W. Elder, and Lindsey M. Collins, Knoxville, Tennessee, for the appellants, Clark Reliance Corporation, Jerguson Gage and Valve Division, Dezurik, Inc., and Flowserve Corporation, f/k/a The Duriron Company, Inc.

James A. Beakes, III, and B. Hartman Knight, Nashville, Tennessee, for the appellant, Armstrong International, Inc.

James E. Wagner, Knoxville, Tennessee, for the appellant, Ingersoll-Rand Company.

Jessalyn H. Zeigler, Sarah B. Miller, and Scott D. Gallisdorfer, Nashville, Tennessee, for the appellants, Neles-Jamesbury, Inc. and Metso Automation USA, Inc.

Joshua A. Wolfe, Knoxville, Tennessee, Alan S. Zelkowitz and Scott D. Stephenson, Pro Hac Vice, Chicago, Illinois, for the appellant, The William Powell Company.

Hugh B. Bright, Jr. and C. Gavin Shepherd, Knoxville, Tennessee, and Steven G. Carlson, Pro Hac Vice, Milwaukee, Wisconsin, for the appellant, Fisher Controls, International, LLC.

H. Douglas Nichol, Knoxville, Tennessee, Donald Capparella, Nashville, Tennessee, Charles Edward Valles, Jr., Pro Hac Vice, Flower Mound, Texas, for the appellees, Carolyn Coffman, Individually and for the benefit of the next of kin of Donald Coffman, deceased.

John Morris Kizer, Knoxville, Tennessee, and Mark A. Behrens, Pro Hac Vice, Washington, DC, for Amici Curiae American Property Casualty Insurance Association, American Tort Reform Association, Tennessee Chamber of Commerce and Industry, Chamber of Commerce of the United States of America, Coalition for Litigation Justice, Inc., National Association of Manufacturers, and NFIB Small Business Legal Center.

# OPINION

## I.    FACTS AND PROCEDURAL HISTORY

This products liability case was originally filed by Donald Coffman, who was diagnosed with mesothelioma, and his wife, Carolyn Coffman ("Appellees").[3] Mr. Coffman worked at the Tennessee Eastman chemical plant ("Tennessee Eastman") between the years of 1968 and 1997. During his career as an equipment mechanic at Tennessee Eastman, Mr. Coffman repaired and replaced equipment that included pumps, valves, steam traps, gaskets and piping while working around packing and insulation. According to Appellees, many of these products contained asbestos. Mr. Coffman spent most of his time working in and around "Building 55," in which acid from other divisions was distilled, reclaimed, and refined. The piping system at Tennessee Eastman carried highly corrosive steam and acids that required the equipment to be repaired daily and sometimes replaced entirely.

After Mr. Coffman developed mesothelioma, Appellees filed suit alleging that Mr. Coffman's exposure to asbestos at his workplace caused him to develop cancer. Specifically, Appellees alleged that Mr. Coffman was exposed to asbestos while working at Tennessee Eastman in three ways: by breathing in dust created by asbestos-containing insulation; by breathing in dust created by the removal of asbestos-containing gaskets; and by breathing in dust created by the removal of asbestos-containing packing. The original complaint included claims for negligence, strict liability, gross negligence, and negligence *per se*, against nearly thirty defendants.[4] These defendants included an independent contractor whose insulators removed and installed asbestos-containing insulation at Tennessee Eastman, a manufacturer of asbestos-containing packing used by Tennessee Eastman, and several industrial equipment manufacturers, including DeZurik, Inc.;

---

[3] As the Court of Appeals explained, the trial court in this case awarded summary judgment to the Defendants/Appellants. As a result, the facts recited herein are based on the record viewed in the light most favorable to the Plaintiffs/Appellees. *Coffman v. Armstrong Int'l, Inc.*, No. E2017-01985-COA-R3-CV, 2019 WL 3287067 (Tenn. Ct. App. July 22, 2019) (citing *Robinson v. Omer,* 952 S.W.2d 423, 424-25 (Tenn. 1997), *perm. app. granted*, (Tenn. Feb. 20, 2020)).

[4] As noted by the Court of Appeals, the Appellees did not sue the manufacturers of the asbestos-containing insulation and gaskets that were supplied to Tennessee Eastman, but rather filed a claim with the Manville Personal Injury Settlement Trust and received compensation for their claim. *Coffman*, 2019 WL 3287067, at *2 n.2. The trial court in this case ruled that any jury would be instructed to "make an allocation of fault to Johns-Manville with regard to insulation and other asbestos-containing materials that Johns-Manville manufactured and supplied to Tennessee Eastman."

Flowserve Corporation f/k/a The Duriron Company, Inc.; Clark Reliance Company, Jerguson Gage and Valve Division; Armstrong International, Inc.; Crane Company; Fisher Controls International, LLC; Ingersoll-Rand Company[5]; Neles-Jamesbury, Inc., Metso Automation USA, Inc.; and the William Powell Company (collectively referred to as the "Equipment Defendants"). Appellees claim that the materials needed and used to repair and maintain the Equipment Defendants' products contained asbestos.

Appellees alleged causes of action against the Equipment Defendants under the Tennessee Products Liability Act of 1978, Tennessee Code Annotated Sections 29-28-101 through -108. They claimed that the Equipment Defendants were liable for Mr. Coffman's illness because he was exposed to asbestos while working with or near the Equipment Defendants' products, such as industrial valves, pumps, and steam traps, that were supplied to Tennessee Eastman several years earlier. They further asserted that the Equipment Defendants were subject to liability because their products were unreasonably dangerous and because the Equipment Defendants failed to adequately warn users of potential asbestos exposure resulting from the post-sale integration of asbestos-containing materials manufactured and sold by others. The products alleged to have contained asbestos included: insulation applied to the exterior of the equipment post-sale; asbestos-containing flange gaskets applied to the exterior of the equipment post-sale; asbestos-containing replacement gaskets integrated into the equipment post-sale; and asbestos-containing replacement packing integrated into the equipment post sale. These later-affixed asbestos-containing products were manufactured and sold by other entities with no involvement from the Equipment Defendants. According to Appellees, the Equipment Defendants were liable under a duty-to-warn theory because it was foreseeable, and even intended, that their equipment be repaired and maintained with asbestos-containing materials.

Each Equipment Defendant moved for summary judgment and asserted that they were entitled to summary judgment on claims related to asbestos exposure arising from

---

[5] During the pendency of this appeal, a "Notice of Bankruptcy Filing and Stay of Proceedings Against the Former Ingersoll-Rand Company was filed with this Court on July 1, 2020, stating that the former Ingersoll-Rand Company, an original named Equipment Defendant in this matter, went through a corporate restructuring on May 1, 2020. As a result, Ingersoll-Rand Company ceased to exist and some of its assets and liabilities, including asbestos-related liabilities at issue in this case, were allocated to a new entity, Aldrich Pump, LLC. On June 18, 2020, Aldrich Pump, LLC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, which resulted in an immediate automatic stay of any claims asserted against Aldrich Pump, LLC. Further, the United States Bankruptcy Court for the Western District of North Carolina has entered a temporary restraining order enjoining further prosecution of asbestos-related claims against protected parties in that proceeding. Ingersoll-Rand Company and Aldrich Pump, LLC assert that this injunction applies to both companies.

products that they did not themselves make, sell, or distribute. As is pertinent to this appeal, the trial court determined that the Equipment Defendants affirmatively negated any duty to warn of asbestos with respect to Appellees' claims arising from the post-sale integration of asbestos-containing insulation, flange gaskets, replacement internal gaskets, and replacement packing that were manufactured and sold by others. Further, the trial court found the duty to warn to be an essential element of Appellee's negligence and strict liability claims under the Tennessee Products Liability Act (the "TPLA"). Therefore, following multiple hearings, the trial court granted summary judgment in favor of the Equipment Defendants with respect to failure-to-warn claims for products made and sold by others. The trial court certified these orders as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

Appellees filed separate notices of appeal against twelve defendants regarding the trial court's dismissal of their claims. The Court of Appeals consolidated the cases on appeal pursuant to Rule 16(b) of the Tennessee Rules of Appellate Procedure. Several issues were presented to the Court of Appeals – only one of which is at issue before this Court.[6] In short, the Court of Appeals disagreed with the trial court's holding that the Equipment Defendants had affirmatively negated their duty to warn, which was an essential element of Appellees' negligence and strict liability claims, and ultimately vacated the final judgments entered by the trial court. As it relates to the appeal before us, the Court of Appeals held that the Equipment Defendants owed a common law "duty to warn about the post-sale integration of asbestos-containing" products "manufactured and sold by others," and were therefore subject to liability under the TPLA.[7]

The Equipment Defendants have appealed this holding. It bears repeating that the Equipment Defendants concede that this ground for summary judgment is applicable only to Appellees' claims arising from the post-sale integration of asbestos-containing insulation, flange gaskets, replacement internal gaskets, and packing materials that were manufactured and sold *by others*. This opinion, therefore, does not address any liability of

---

[6] The Court of Appeals' original opinion in this case was filed on July 22, 2019. *Coffman*, 2019 WL 3287067. On August 7, 2019, the Court of Appeals vacated and withdrew its original opinion and filed a substituted opinion that more precisely described the summary judgment standard of review. In all other respects, the opinions are identical.

[7] We recognize that the Court of Appeals ruled on issues that are not before this Court, including matters related to statutes of repose and evidence of causation. This opinion is only intended to alter the judgment of the Court of Appeals as it relates to whether the Equipment Defendants affirmatively negated their duty to warn.

the Equipment Defendants for Mr. Coffman's exposure to asbestos-containing products that were included with the Equipment Defendants' products at the time of sale.

## II.    ANALYSIS

### A.    Standard of Review

This appeal originates from the trial court's grant of a motion for summary judgment and the Court of Appeals' partial reversal of the trial court's order. We review the grant of a motion for summary judgment de novo with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Under Rule 56.04 of the Tennessee Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we must determine whether the moving party satisfied its burden of production "(1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

More specifically, the issue presented for review concerns statutory construction, which presents a question of law, and we likewise review such questions de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016); *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *Carter*, 279 S.W.3d at 564 (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). "Furthermore, the 'common

law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds by, Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016).

"When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language . . . ." *Carter*, 279 S.W.3d at 564; *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). A statute is ambiguous when "the parties derive different interpretations from the statutory language." *Howard*, 504 S.W.3d at 270 (quoting *Owens*, 908 S.W.2d at 926).

> However, this proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute. In other words, both interpretations must be reasonable in order for an ambiguity to exist.

*Frazier*, 558 S.W.3d at 152 (internal quotation marks omitted) (quoting *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011)).

If a statute is ambiguous, the Court "'may reference the broader statutory scheme, the history of the legislation, or other sources' to determine the statute's meaning." *Id*. (quoting *Sherman*, 266 S.W.3d at 401). The Court must "endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws." *Id*. at 153 (citing *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)). "[W]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." *Id*. (quoting *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010)); *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003). Moreover, "[w]hen one statute contains a given provision, the omission of the same provision from a similar statute is significant to show that a different intention existed." *Frazier*, 588 S.W.3d at 153 (quoting *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997)).

## B.     Tennessee Products Liability Act

We granted this appeal to address whether "the Equipment Defendants had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others." Whether there is a duty to warn of the dangers associated with the post-sale integration of asbestos-containing parts that are manufactured

and sold by others is an issue of first impression in Tennessee. The products at issue did not contain asbestos when they left the Equipment Defendants' control, but rather an end user integrated or used asbestos-containing materials with the Equipment Defendants' products after their final sale.

The answer to whether the Equipment Defendants had a duty to warn as alleged is found in the plain language of the Tennessee Products Liability Act. In 1978, the Tennessee Legislature enacted the TPLA, which provides an extensive statutory framework for all claims arising from injuries alleged to have been caused by products. *See* Tenn. Code Ann. § 29-28-102(6) (2012). Through its enactment, the TPLA superseded common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product. Moreover, the TPLA speaks to the issue of a duty to warn and specifically provides that a failure to discharge a duty to warn, whether negligent or innocent, falls within the scope of the TPLA:

> "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

Tenn. Code Ann. § 29-28-102(6). Therefore, in cases in which a failure to warn is at issue, the language of the TPLA determines whether manufacturers can be liable for failing to warn of dangers associated with products they did not themselves make or sell.

Appellees alleged injuries to Mr. Coffman as a result of work-related exposure to asbestos. However, none of the Equipment Defendants' products at issue contained asbestos when they were under the Equipment Defendants' control. The Equipment Defendants assert that they cannot be held liable for end-products containing asbestos that they themselves did not manufacture or sell. We agree that the best reading of the TPLA does not create a duty or liability for defendants for the post-sale incorporation of products containing asbestos because these products were incorporated into that equipment after it left their control. This Court has stated that "[t]he key operative provision of the Act is

[Tennessee Code Annotated Section] 29-28-105(a)." *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 689 (Tenn. 1995). The TPLA specifically provides that a defendant shall not be liable under the TPLA unless the product is defective or unreasonably dangerous at the time it left the defendant's control*, stating that "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous *at the time it left the control of the manufacturer or seller*." Tenn. Code Ann. § 29-28-105(a) (2012) (emphasis added).[8] "In order to prevail in a products liability action, a plaintiff must prove that the product in question was either defective or unreasonably dangerous, as those concepts are defined in the Act, *at the time it left the control of the manufacturer or seller*." *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299 (Tenn. Ct. App. 1995) (emphasis added).

Tennessee case law further supports a conclusion that a manufacturer's duty to a consumer is measured at the time the product leaves its control. In *Goode v. Tamko Asphalt Products, Inc.,* 783 S.W.2d 184, 187 (Tenn. 1989), this Court held that there is no duty to warn if a product is not defective or unreasonably dangerous at the time it left the defendant's control:

> There is no disagreement with the proposition that this case is controlled by the Tennessee Products Liability Act of 1978. Plaintiff's theory of recovery in this case is that defendants were guilty of a negligent breach of duty to warn of the non-apparent danger associated with the use of their roofing products. A failure to discharge a duty to warn, whether negligent or innocent, is expressly included in the definition of a products liability action in [Tennessee Code Annotated Section] 29–28–102(6). [Tennessee Code Annotated Section] 29–28–105(a) provides that to impose liability on a manufacturer it must be shown that the product was in a defective condition, or an unreasonably dangerous condition, *at the time it left the manufacturer's control*. In this case there is no contention that the products were in a defective condition. Thus, the issue is whether the defendant's roofing products were in an unreasonably dangerous condition *at the time the products left the control of each manufacturer.* It follows that if the products were unreasonably dangerous, defendants had a duty to put an appropriate

---

[8] "[T]he Tennessee Products Liability Act of 1978 . . . substantially codifies § 402A Restatement (Second) of Torts. . . ." *Shropshire v. Am. Tobacco Co. Div. of Am. Brands, Inc.*, No. C.A. 1143, 1988 WL 41018, at *1 (Tenn. Ct. App. Apr. 29, 1988) (footnote omitted), *perm. app. denied*, (Tenn. July 25,1988). "The Tennessee statute uses the language 'defective condition or unreasonably dangerous,' whereas the Restatement uses 'defective condition unreasonably dangerous.'" *Shropshire*, 1988 WL 41018, at *1 n.2.

> warning on the labels, but if the products were not unreasonably dangerous, the law imposes no duty to warn.

(Emphasis added); *see also Whaley*, 900 S.W.2d at 299 ("In order to prevail in a products liability action, a plaintiff must prove that the product in question was either defective or unreasonably dangerous, as those concepts are defined in the Act, at the time it left the control of the manufacturer or seller."). Therefore, we hold that the language of the TPLA and accompanying case law places a duty to warn on a manufacturer or seller to warn about the condition of the product only if it was defective or unreasonably dangerous at the time the manufacturer transfers control of the product.

Appellees assert that the Equipment Defendants ignore certain language within the TPLA, including that a product is in a "defective condition" under the TPLA when it is in a condition that "renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). Appellees argue that the Equipment Defendants' products were in a defective condition at the time they left the Equipment Defendants' control because they were designed to use asbestos-containing materials and provided no warnings as to the dangers of asbestos. According to Appellees, the Court of Appeals' opinion is actually consistent with the TPLA because the definition of "defective condition" includes "anticipatable handling." Both "defective condition" and "unreasonably dangerous" are defined terms within the TPLA. The TPLA defines "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). "Unreasonably dangerous" applies to a product that is:

> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8). Contrary to Appellees assertion, these provisions still link a defendant's liability to the defendant's own product, not the product of another manufacturer. The very definition of "defective condition" states that the product's condition "renders *it* unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2) (emphasis added). The "*it*" refers to the manufacturer's own product. In this case, the "*it*" is the Equipment Defendants' original product, not the Equipment Defendants' product plus some later-included asbestos-containing material.

- 10 -

Appellees further point to the language of the TPLA that states "[i]f a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent *unforeseeable* alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable." Tenn. Code Ann. § 29-28-108 (emphasis added). Based on this provision, Appellees assert that the language of the TPLA anticipates that manufacturers are liable for the *foreseeable* alterations, changes, improper maintenance, or abnormal use of their products. As it relates to the case at hand, Appellees assert that the Equipment Defendants were not only able to foresee the dangers, but they actually intended and specified that asbestos material be used with their products.

We decline to read Section 29-28-108 in a vacuum as Appellees suggest. "'In interpreting statutes, . . . we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose.'" *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 897 (Tenn. 2011) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). When viewing the TPLA as a whole, we find it dispositive that the end-products at issue on this appeal *were neither made nor sold by the Equipment Defendants*. Again, this appeal deals strictly with the Equipment Defendants in situations where there was post-sale integration of asbestos-containing parts manufactured and sold by others. Several provisions of the TPLA state that a manufacturer or seller's duty to warn is limited to products actually made or sold by that defendant. For example: "Any action against a *manufacturer or seller of a product* for injury to person or property *caused by its defective or unreasonably dangerous condition* must be brought within the [statutory time] period . . . ." Tenn. Code Ann. § 29-28-103(a) (2012) (emphasis added); "*Compliance by a manufacturer or seller* with any . . . regulation existing *at the time a product was manufactured* and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that *the product is not in an unreasonably dangerous condition* . . . ." Tenn. Code Ann. § 29-28-104(a) (2012) (emphasis added); "No product liability action . . . shall be commenced or maintained against *any seller, other than the manufacturer*, unless: (1) The seller exercised substantial control over that aspect . . . of *the product that caused the alleged harm*; . . . (4) *The manufacturer or distributor of the product or part in question* is not subject to service of process . . . ." Tenn. Code Ann. § 29-28-106 (2012) (emphasis added); "If a product is not unreasonably dangerous at the time it leaves the control of the *manufacturer or seller* but was made unreasonably dangerous by subsequent unforeseeable alteration . . . the *manufacturer or seller* is not liable." Tenn. Code Ann. § 29-28-108 (2012) (emphasis added).

The interpretation used by the Court of Appeals and proposed by the Appellees is inconsistent with the language of the TPLA and this Court's holding in *Goode*. The Court of Appeals in this case acknowledged our holding in *Goode*, but stated that reliance on this authority "slightly mischaracterizes the issue." *Coffman v. Armstrong Int'l, Inc.*, No. E2017-01985-COA-R3-CV, 2019 WL 3287067, *18 (Tenn. Ct. App. July 22, 2019), *perm. app. granted*, (Tenn. Feb. 20, 2020). Rather, the Court of Appeals relied on the balancing test formulated in *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008), and determined that "[b]ecause foreseeability of harm is central to the *Satterfield* duty analysis" the construction of the TPLA proposed by the Equipment Defendants (i.e., that they are not liable for products they did not make or sell regardless of the foreseeability of post-sale integration of asbestos-containing parts) is "clearly inconsistent with Tennessee law." *See id.* at *19. The intermediate court then went on to apply the *Satterfield* analysis to the facts of this case. *Id.* at *19-20. At the conclusion of its analysis, the Court of Appeals determined:

> In our view, the degree of foreseeable harm and the gravity of potential harm outweighed the burden that the equipment defendants would have suffered by warning about the post-sale integration of asbestos-containing insulation, flange gaskets, internal replacement gaskets, and replacement packing. Accordingly, the equipment defendants *did* have a duty to warn about the dangers associated with those later-added products. The trial court erred by granting summary judgment to the equipment defendants on the ground that they negated their alleged duty to warn.

*Id*. at *20.[9]

Appellees also assert that the Court of Appeals decision is consistent with the U.S. Supreme Court's decision in *Air & Liquid Systems Corp. v. DeVries,* 139 S. Ct. 986 (2019). That case was discussed in some detail by the Court of Appeals. *Coffman,* 2019 WL 3287067, at *13-15. The *DeVries* case, however, is in no way determinative of the outcome in this case because we are bound by the specific language of the TPLA. The U.S. Supreme Court had no legislative enactment to apply regarding its duty analysis, and the majority of the Court, therefore, crafted its own test. By contrast, the TPLA supplies the test we must apply. Furthermore, the U.S. Supreme Court explicitly relied on the fact that the case arose

---

[9] The Court of Appeals also explained that because the Appellees sued the manufacturers of the "final, integrated products," the "component parts doctrine" articulated by this Court in *Davis v. Komatsu America Industries Corp.*, 42 S.W.3d 34 (Tenn. 2001), is inapplicable. *Coffman,* 2019 WL 3287067, at *16-17. We agree.

- 12 -

from facts within the maritime context, noting "[m]aritime law's longstanding solicitude for sailors," *DeVries,* 139 S. Ct. at 995,[10] which of course does not apply to the facts of this case.

We reiterate that the language of the TPLA dictates our decision here, and we do not opine on what we perceive to be the optimal outcome of this case in terms of public policy. That determination is for the legislature. *See McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 690 (Tenn. 2020). The dissent implies that we have interpreted the statutory language at issue to adopt the "bare-metal" approach described by the United States Supreme Court in *DeVries.* The *Devries* case*,* however, relates to federal maritime tort common law and has nothing to do with the issue before us, the interpretation of the TPLA. As a result, the *Devries* case has no bearing on our decision here. Our Legislature has set forth a statute by which we must abide. We determine that the resolution of this case should be based on the language of the TPLA, which is consistent with our holding in *Goode*. The inquiry by the Court of Appeals into whether a common law duty exists was, therefore, in error. It is within the purview of the legislature to change common law and to set public policy, and the judiciary is bound by the constitutional acts of the Legislature. *See McClay*, 596 S.W.3d at 690; *Mills v. Wong*, 155 S.W.3d 916, 923 (Tenn. 2005) ("The Tennessee General Assembly itself has the power to weigh and balance competing public and private interests in order to place reasonable limitations on rights of action in tort which it also has the power to create or abolish."). The *Satterfield* analysis is inapplicable to the particular question presented in this case because, as this Court explained in *Satterfield*, the foreseeability test it articulated does not apply if "prior court decisions and statutes have already established the doctrines and rules governing a defendant's conduct." *See Satterfield*, 266 S.W.3d at 365. We hold that, under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others.

Both Appellees and the Equipment Defendants assert that the majority of jurisdictions dealing with this issue support their respective positions. According to Appellees, "[c]ourts in a clear majority of other jurisdictions have held that a manufacturer may be liable even if it did not manufacture, install, or supply the asbestos material used in, on, or adjacent to its product." In support of this assertion, Appellees set forth examples of other state and federal court decisions, most of which are from lower courts. *See, e.g.,*

---

[10] Relying on *DeVries* to support its analysis, the dissent in this case asserts that the United States Supreme Court "never states that its decision depends on [the] distinction" of maritime law and its "longstanding solicitude for sailors." We, however, read the holding in *Devries* to be substantially based on the fact that the case arose in the maritime tort context. *See DeVries,* 139 S. Ct. at 993-96 (stating that the "third approach is most appropriate *for this maritime tort context*," "we conclude as follows: [i]n the *maritime tort context*," and, "*[t]he maritime tort rule we adopt today*." (emphasis added)).

*Berkowitz v. A.C. & S., Inc.*, 733 N.Y.S.2d 410, 411 (App. Div. 2001) (holding that a genuine issue of material fact existed as to whether a manufacturer had a duty to warn of the dangers of asbestos that it neither manufactured or installed); *Sweredoski v. Alfa Laval, Inc.*, No. PC-2011-1544, 2013 WL 5778533 (R.I. Super. Ct. Oct. 21, 2013) (stating that "a defendant cannot categorically avoid liability for a plaintiff's injuries for the sole reason that those injuries were directly caused by exposure to a third party's replacement parts"). The problem is that none of the cases cited by Appellees interpret the language of the TPLA, and Appellees fail to adequately address how these decisions square with the language of our statute. However, there are states, such as Georgia, that have similar statutes to the TPLA and have construed their statutes consistently with our holding in this case. *See, e.g., Davis v. John Crane, Inc.*, 836 S.E.2d 577, 583-84 (Ga. Ct. App. 2019) (interpreting the Georgia product liability act and refusing to impose on a manufacturer a duty to warn for products manufactured by others).

### III.    CONCLUSION

In sum, we hold that, under the language of the TPLA, the Equipment Defendants cannot be held liable for injuries resulting from products they did not make, distribute, or sell. The judgment of the Court of Appeals is reversed in part. We remand to the trial court for proceedings consistent with this opinion. The costs of this appeal are taxed to the Appellees, for which execution may issue if necessary.

_____

ROGER A. PAGE, JUSTICE