IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2024 Session

## SARAH ELIZABETH WOODRUFF v. FORD MOTOR COMPANY

**Appeal from the Circuit Court for Knox County**
**No. 2-486-14     William T. Ailor, Judge**

---

### No. E2023-00889-COA-R9-CV

---

After a tragic motor vehicle accident caused her husband's death and her minor child's serious injuries, the plaintiff filed this products liability action against several manufacturers and sellers. We granted the instant interlocutory appeal in which the defendant requests review — based on the Tennessee Supreme Court's majority opinion in *Carolyn Coffman, et al. v. Armstrong International, Inc., et al.*, 615 S.W.3d 888 (Tenn. 2021) — of the trial court's denial of its motion for relief from unfavorable summary judgment orders. We reverse the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

John Randolph Bibb, Jr., Robert Francis Chapski, and Ryan Nelson Clark, Nashville, Tennessee, for the appellant, Ford Motor Company.

Richard Everett Collins, II, and Dan Channing Stanley, Knoxville, Tennessee, for the appellee, Sarah Elizabeth Woodruff.

## OPINION

## I.     BACKGROUND

On August 23, 2013, there was a car accident claiming as victims the family of Plaintiff-Appellee Sarah Elizabeth Woodruff ("Plaintiff"). The recidivous,[1] speeding,

---

[1] Mr. Spangler had multiple prior convictions for driving under the influence.

intoxicated driver, Scott Spangler, crashed his car head-on into the 2012 Nissan Juke driven by Plaintiff's husband, Benjamin Woodruff, causing it to spin into the path of a minivan, which hit the Nissan on the driver's side, killing Mr. Woodruff. Plaintiff's two children were in the backseat. The older child, Ethan, was six-years-old at the time. His sister, Kate, was then four-years-old. When the collision began, Ethan was seated on the passenger side of the Juke, in the forward-facing Pronto Belt-Positioning Booster Seat manufactured by Dorel Juvenile Group, Inc.[2] Kate was seated behind her father on the driver's side and was buckled into a forward-facing child seat with a five-point harness. Kate sustained minor physical injuries, but has undergone treatment to help with flashbacks. Sadly, Ethan sustained a traumatic brain injury, a laceration, and multiple fractures. Ethan has undergone rehabilitation in the years following the tragedy. Plaintiff alleges that he will need caregivers for the rest of his life.

Plaintiff filed this products liability action on July 25, 2014. Plaintiff was permitted to amend her complaint several times. She sued the driver; Defendant-Appellant Ford Motor Company ("Ford"); Seatbelt Extender Pros, LLC; Autoliv Safety Technology, Inc.; Travelers Personal Security Insurance Company; and Dorel Juvenile Group, Inc. Travelers was dismissed from the action by agreed order entered April 9, 2018. The trial court approved Plaintiff's settlement with Autoliv in June of 2018. Plaintiff has resolved her claims against Seat Belt Extender Pros, LLC. The operative fourth amended complaint was filed in 2019.

Before the accident, on March 13, 2013, Mr. Woodruff purchased from former defendant Seat Belt Extender Pros via eBay a seat belt extender to use in his Nissan Juke. The extender he received was branded Ford. The seat belt extender at issue was designed for use in the front seats of certain generations of the Ford Focus vehicle. Ford's regular seat belts have enough webbing to fit around a 400-pound human, so Ford's seat belt extender is intended for very large adults. The extender works by clicking into the male and female ends of the vehicle's existing buckle, providing more webbing to fit around a person of such size.

Former defendant Autoliv was Ford's component and subcomponent parts supplier. The components included the seat belt extender's buckle, tongue, and webbing. Autoliv produced this Ford Focus seat belt extender and developed the warning label on the extender for Ford, at Ford's direction. David Prentkowski, senior principal engineer within Autoliv's seat belt engineering group, related that Ford defined the components it wanted to be in the restraint system. Roger Burnett, technical leader within Ford's design analysis department, explained that the Ford Focus seat belt system, which includes a compatible seat belt extender, "involves a great deal of engineering work that Ford and Autoliv have

---

[2] Dorel is a defendant in the underlying action, but not a party to the instant Rule 9 appeal.

to work together on." Ford reviewed the final drawings and schematics of the seat belt extender. It was labeled as a Ford genuine part and included a Ford service part number. Once seat belt extenders were produced, Autoliv shipped them in bulk to another Ford vendor, Pak-Rite, for packaging. Ford dealerships ordered seat belt extenders like the one Mr. Woodruff bought from Seat Belt Extender Pros directly from Ford, not from Autoliv. Ford charges its dealerships a few cents for each seat belt extender ordered. It is undisputed that the webbing, latch plate, and buckle of the subject seat belt extender met Federal Motor Vehicle Safety Standards regulations.[3]

Ethan, of course, did not physically require a seat belt extender to be buckled into his Dorel booster seat, as Plaintiff, one of her experts, and David Prentkowski agreed in their respective depositions. Before Mr. Woodruff purchased the seat belt extender, the standard seat belt in the vehicle was used to buckle in Ethan. The standard backseat buckle in the Woodruffs' 2012 Nissan Juke was recessed, so Mr. Woodruff purchased the seat belt extender in an effort to make it easier to buckle in Ethan or for Ethan to buckle himself in when he was riding in the booster seat. After purchasing the Ford-branded seat belt extender, the Woodruffs used it to connect Ethan's booster seat to the Nissan Juke's backseat seat belt restraint system.

Ethan and his father were not the only people who found it awkward to use recessed seat belt receptacles. The appellate record contains certain customer inquiries along the lines of the following 2007 email from a Ford customer to a representative within Ford's Automotive Safety Office:

> I just purchased a 2007 Mustang. My kids are having trouble connecting the seat belts in the back seat due to the way the seats are designed. I know there are seat belt extenders for the front, but I need them for the rear. The design is different than the front. I am willing to purchase them if need be . . . .

In response to such inquiries in which customers were contemplating the use of a seat belt extender with a child restraint, Ford warned them not to use seat belt extenders with child seats. In response to the email above, Ford wrote:

---

[3] Tennessee Code Annotated section 29-28-104(a) provides that:

Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

You [did] not tell me if your kids are very large but it is unlikely they need extenders. Extenders are for people where the belt won't reach around them to buckle, as in[,] it cannot reach. They are not intended for children. I also do not know if your children are in booster seats or not. It may help if you arrange to meet with a Certified Child Passenger Safety Technician, who can help show you how to properly restrain your children in the vehicle. If you are near Dearborn[,] MI you and I can arrange to meet. Otherwise[,] you can locate a technician at the following website . . . .

Plaintiff alleges that Seat Belt Extender Pros intentionally misrepresented that the seat belt extender it sold to Mr. Woodruff could safely be used with child restraint devices such as booster seats. It absolutely could not, as the record establishes. The parties agree that no known automaker intends for seat belt extenders to be used by or for children under any circumstance. Plaintiff further alleges that Seat Belt Extender Pros intentionally misrepresented to Mr. Woodruff "that a seat belt extender bearing the logo of an automobile manufacturer different from the manufacturer of the vehicle for which the seat belt extender is purchased for use will fit and function properly." Seat Belt Extender Pros has ceased marketing extenders for children's car seats or booster seats.

*Ford's Investigation of Derek Martin, Seat Belt Extender Pros, and Toccoa Dealership*

The evidence in the record suggests that Ford knew as far back as 2008 that various Ford dealerships were ordering large quantities of seat belt extenders from Ford and selling them on eBay and other online marketplaces. Seat Belt Extender Pros purchased the seat belt extender used on Ethan's booster seat from Derek Martin who worked in the Toccoa Ford Lincoln Mercury dealership's parts department from 2004 to 2011. Derek Martin, in turn, claimed that he purchased that seat belt extender and tens of thousands more from the aforementioned dealership. Also in 2008, Ford discovered that Seat Belt Extender Pros was selling Ford-branded seat belt extenders online without authorization. Ford did not send a cease-and-desist communication to Seat Belt Extender Pros. In July of 2008, Ford issued an electronic field communication and dealer communication to all Ford and Lincoln Mercury dealers to advise that:

Ford Motor Company has a long-standing practice of providing factory-authorized safety belt extenders free of charge to dealers for those customers who may have special needs or may be outside the federal government-set [weight] percentiles.

*Dealers are advised that belt extenders are to be ordered only for customers requiring belt extension and should not be sold by dealers for any reason.* This letter serves as a reminder that Ford Motor Company's Brand Protection

office will monitor excessive orders of safety belt extenders. Dealers found in violation of the free safety belt extender agreement will be audited and billed for the safety belt extenders.

The Brand Protection office, to assure compliance with this policy, will also monitor internet web sites and re-sale market outlets.

(Emphasis in original). One of Ford's managers recalled that the individual within the Brand Protection office who was tasked with monitoring websites ceased working for the company, so those monitoring efforts "walked out the door." Ford again evaluated this issue in 2012, after three of its Vice Presidents received anonymous letters about the Toccoa dealership's selling of seat belt extenders. Ford limited the number of extenders any dealership could order and also contemplated a possible customer buy-back proposal, but did not implement one. At Ford's direction, Pak-Rite began packaging the seat belt extenders in a plastic bag that states "NOT FOR RESALE" and "MUST BE PROVIDED TO CUSTOMER AT NO CHARGE."

In the operative fourth amended complaint, Plaintiff alleges "Ford failed to warn or instruct that the seat belt extender at issue should never be used with children and child booster seats and its failure to warn or instruct led to the traumatic injury suffered by Ethan Woodruff." In her claim for punitive damages against Ford, Plaintiff asserts that Ford had actual knowledge "as early as 2007" that "consumers were either misusing or were likely to misuse its seat belt extenders with child restraints and booster seats," yet failed to warn of such misuse. She also alleges that Ford is strictly liable because the seat belt extender "was defective and unreasonably and inherently dangerous when it was placed into the stream of commerce and when it was sold." However, a decade of litigation has not brought to light any defect with the Ford-branded seat belt extender *by itself*. From a design standpoint, the third-party products used in this case — Dorel's booster seat and Nissan's Juke — were not necessary to make the seat belt extender function as intended. It is undisputed in the record that the extender was fit for its intended purpose of securing large passengers in the front seat of a Ford Focus. On this point, two of Plaintiff's expert witnesses offered deposition testimony. Larry A. Sicher testified:

Q. Do you have any opinion in this case that the subject, what I'll call, Ford seat belt extender was defective in design or manufacture taken by itself?

A. In isolation, as far as manufacturing goes, I don't believe there's – I don't know of a manufacturing issue. On the design aspect, it's primarily related to the warnings or lack of warnings that are on there related to how it should be used.

- 5 -

Q. Ok. So your design opinions with respect to the extender are related to the warnings?

A. The design opinions I have are related to the warnings, and then the specifics of that are going to be dealt with [by another of Plaintiff's experts,] Dr. Kress. But as far as the design – as far as I can tell, the design worked how it was supposed to work in that it was just put in a position that it should not have been put in.

Later, when asked to clarify his position, Mr. Sicher testified that he did not think the seat belt extender used to secure Ethan's booster seat was defective "in and of itself," and he did not think it was designed or built defectively. Likewise, on February 21, 2020, Tyler A. Kress, Ph.D., testified:

Q. Ok. Can you trace for me Ethan's injuries to some specific error in the design or construction of this seat belt extender? Do you want my question again?

A. No, I think I understand it. The injuries that Ethan sustained that are related to the design and construction of this extender has everything to do with the fact that the extender should have never been used on Ethan and never been used in a child restraint seat. It's not designed for that. That's not the purpose. It should never have been used for that. And as a result of it being used, in this accident, it – it – it became it was damaged to the extent that, due to the fact that it was used in a way it wasn't supposed to be used from the loads in the accident such that it came – it came undone and it did not do its – the restraint[']s – the primary restraint['s] intended purpose and that is to prevent injury and prevent him from translating [sic] into other parts of the interior, and that is why he got injured because it was used in the – used for this application and it shouldn't be.

Dr. Kress reiterated that he "was not pointing to a specific design defect or manufacturing defect," but opined that "[y]ou cannot separate use from the design of a product . . . [and] that includes foreseeable misuses."

*The Product Warnings and Instructions*

Plaintiff testified that she does not know whether the late Mr. Woodruff read the product warnings and instructions pertinent to this case. The Nissan Juke was primarily his vehicle. The label sewn on the actual Ford seat belt extender used with Ethan's booster seat states:

- 6 -

SEAT BELT EXTENDER WARNING
Do not use extender:
Unless it is physically required in order to wear the vehicle's safety belt.
If it causes the distance between the front edge of the extender buckle and the center of the occupant's body to be less than 6 inches.
Incorrect use of extender may result in serious injury. Use extender only to the vehicle and seation [sic] position it was provided for.
Remove and stow when not in use by the person it was provided for.

The 2012 Nissan Juke Owner's Manual instructs and warns as follows:

SEAT BELT EXTENDERS
If, because of body size or driving position, it is not possible to properly fit the lap-shoulder belt and fasten it, an extender that is compatible with the installed seat belts is available that can be purchased. The extender adds approximately 8 in (200 mm) of length and may be used for either the driver or front passenger seating position. See a NISSAN dealer for assistance with purchasing an extender if an extender is required.

! WARNING
- Only NISSAN seat belt extenders made by the same company which made the original equipment seat belts, should be used with NISSAN seat belts.
- Adults and children who can use the standard seat belt should not use an extender. Such unnecessary use could result in serious personal injury in the event of an accident.
- Never use seat belt extenders to install child restraints. If the child restraint is not secured properly, the child could be seriously injured in a collision or a sudden stop.

The Dorel Pronto Belt-Positioning Booster Instruction Manual Eng. 4358-4376C warns and instructs:

Read all instructions BEFORE USING this child restraint.

! IMPORTANT !
Failure to follow the warnings on the labels and in the instruction manual can result in the death or serious injury of your child.

Thank you for choosing this car seat, referred to throughout this manual as a child restraint.

! Do not substitute parts or try to modify the child restraint in any way.

! Dorel Juvenile Group does not recommend the use of any child restraint accessories except those provided by DJG.

This booster MUST only be used with a lap/shoulder belt.

- If your vehicle belt is too short, contact your vehicle dealer for a seat belt extender. Do not route the seat belt in any way except as shown in the instructions.

  Place lap belt across child's thighs. Lock buckle. NOTE: Make sure the lap and shoulder belt on the buckle side are placed under armrest [of the booster seat] as shown [in the accompanying pictogram number two on page 18].

When questioned by Dorel's counsel, Mr. Sicher agreed that if an occupant were seated in the subject booster seat, the addition of the Ford seat belt extender would cause the vehicle's lap and shoulder belts not to be underneath the booster seat's armrest as page 18 of the booster seat manual instructs in its language and pictogram number two. Mr. Sicher explained the effect:

Q. Sure. The reason why the shoulder belt doesn't go all the way across his body is because the seat belt extender is going underneath the armrest [of the booster seat] and up onto his leg[,] right?

A. The seat belt extender has changed the geometry of the shoulder belt, therefore it's not engaging him in the way that it would normally engage.

Q. Right. If the lap and shoulder belt did extend all the way under the buckle side armrest, then Ethan would be – and assuming proper tension in the system, he would be getting the intended restraint from the lap shoulder belt; right?

A. Yes.

*Ford's and Dorel's Motions for Summary Judgment*

Ford was unsuccessful on its motions for summary judgment filed earlier in the litigation on Plaintiff's previously-filed complaints. Then, on January 4, 2021, the Tennessee Supreme Court issued *Carolyn Coffman, et al. v. Armstrong International, Inc.,*

*et al*., 615 S.W.3d 888 (Tenn. 2021). *Coffman* was a products liability case filed by a husband and wife after the husband developed mesothelioma following alleged asbestos exposure in the workplace. *Coffman*, 615 S.W.3d at 891. *Coffman* concerned a group of defendants who were manufacturers of industrial equipment and who were collectively referred to as the "Equipment Defendants" in the opinion. *Id*. at 892. Liability for the husband's illness was alleged against the Equipment Defendants "because he was exposed to asbestos while working with or near the Equipment Defendants' products, such as industrial valves, pumps, and steam traps." *Id*. The products at issue in *Coffman* "did not contain asbestos when they left the Equipment Defendants' control, but rather an end user integrated or used asbestos-containing materials with the Equipment Defendants' products after their final sale." *Id*. at 895. The "later-affixed asbestos-containing products were manufactured and sold by other entities with no involvement from the Equipment Defendants." *Id*. at 892. In their lawsuit, the husband and wife claimed that the Equipment Defendants were liable for the husband's illness "under a duty-to-warn theory because it was foreseeable, and even intended, that their equipment be repaired and maintained with asbestos-containing materials." *Id*. The plaintiffs contended that the integration of asbestos-containing insulation, packing, and gaskets into the Equipment Defendants' products caused the Equipment Defendants' products to become defective. *Id*. The Tennessee Supreme Court granted permission to appeal to determine whether "the Equipment Defendants had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others." *Id*. at 891. The Court examined "the plain language" of the Tennessee Products Liability Act, Tennessee Code Annotated sections 29-28-101 through -108, in making its determination. *Coffman*, 615 S.W.3d at 895. In a 4-1 decision, the majority of the Court held:

- "[T]hat the language of the TPLA and accompanying case law places a duty to warn on a manufacturer or seller to warn about the condition of the product only if it was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Id*. at 896.

- "[T]hat, under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others." *Id*. at 899.

- "[T]hat, under the language of the TPLA, the Equipment Defendants [could not] be held liable for injuries resulting from products they did not make, distribute, or sell." *Id*. at 900.

At the time the *Coffman* opinion was delivered, Dorel's motion to seek interlocutory appeal to this Court was pending in the trial court, so Dorel submitted *Coffman* as supplemental authority to that motion. In the same vein, on February 3, 2021, Ford moved the trial court for relief from its previous unfavorable summary judgment orders and for

entry of final judgment in its favor pursuant to Tennessee Rule of Civil Procedure 54.02. In its motion, Ford argued that "the *Coffman* decision now makes clear that Ford, as a matter of law, had no duty to warn about any alleged dangers of using its seat belt extender in combination with another manufacturer's product, including Dorel's booster seat." Accordingly, Ford requested judgment in its favor on Plaintiff's failure to warn claim.

The trial court heard the pending motions on February 15, 2023. Ford's and Dorel's respective counsel presented arguments. By order entered March 6, 2023, the trial court found that the Tennessee Supreme Court's "express holding in *Coffman* is not limited to cases involving asbestos exposure or to products that require aftermarket integration, and the Supreme Court did not create any common law exceptions to this holding." The trial court read *Coffman* as a "reaffirm[ation] that a manufacturer is not liable for injuries resulting from products it did not make or sell and has no duty to warn with respect to such products." The trial court concluded that Dorel had no duty to warn about the seat belt extender that it did not manufacture or sell, directed that final judgment on all claims be entered in Dorel's favor, and dismissed it from the action.[4] By order entered April 19, 2023, the trial court denied Ford's February 3, 2021 motion. The court reasoned that the seat belt extender at issue was made for, distributed by, and apparently sold by Ford dealers, so Ford is not entitled to summary judgment under *Coffman*.

The case proceeded to trial against Ford on February 27, 2023, but ended in a mistrial. Ford then sought this interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.

## II. ISSUE

The trial court certified the following question for appeal:

> Whether the Tennessee Supreme Court's decision in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888, 889 (Tenn. 2021), which holds that a manufacturer has no duty to warn with respect to products manufactured and sold by others, requires dismissal as a matter of law of Plaintiff's failure to warn claim against Ford relating to a seatbelt extender used in combination with a child booster seat manufactured and sold by another manufacturer.

---

[4] Plaintiff's appeal of the trial court's order dismissing Dorel is pending in this Court. *Sarah Elizabeth Woodruff, ex rel. Ethan Woodruff, et al. v. Ford Motor Company, et al.*, No. E2023-00488-COA-R3-CV. Plaintiff moved to consolidate the instant interlocutory appeal with that Rule 3 appeal. We denied consolidation by order entered November 20, 2023.

By order entered July 12, 2023, we granted permission to appeal on this question.

### III. STANDARD OF REVIEW

"The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Likewise, we review issues of statutory construction de novo with no presumption of correctness attaching to the trial court's rulings. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted). Appellate review of a trial court's ruling granting a motion for summary judgment is de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citation omitted). Under the de novo standard of review, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* (citation omitted).

# IV. DISCUSSION

By its language, the Tennessee Products Liability Act governs all claims stemming from injuries caused by products. Tenn. Code Ann. § 29-28-102(6).[5] The TPLA provides the statutory framework for bringing defective product claims against manufacturers and sellers and it "supersede[s] common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product." *Coffman*, 615 S.W.3d at 895. The parties agree that the claims alleged in Plaintiff's operative fourth amended complaint are governed by the TPLA, including her claim that "Ford failed to warn or instruct that the seat belt extender at issue should never be used with children and child booster seats and its failure to warn or instruct led to the traumatic injury suffered by Ethan Woodruff."

For years of this litigation, Ford maintained that it does not qualify as a manufacturer of the subject seat belt extender bearing its iconic logo. Ford has abandoned that argument and does not assert it on appeal. Ford's status as the manufacturer of the seat belt extender is implicit in all of its appellate briefing.[6] The TPLA defines "manufacturer" as "the *designer*, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102(4) (emphasis added). The evidence in the record shows that, although Autoliv supplied the components, Ford was a designer of the seat belt extender. Autoliv worked at Ford's direction when developing the warning label. Ford defined the components it wanted to be in the Ford Focus restraint system. Ford's *design analysis* department was involved. A technical leader within that department explained that the Ford Focus seat belt system, which includes a compatible seat belt extender, "involves a great deal of engineering work that Ford and Autoliv have to work together on." Ford reviewed the final drawings and schematics of the seat belt extender.

---

[5] The TPLA defines "Product liability action" to include:

> [A]ll actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, *warning*, instruction, marketing, packaging or labeling of any product. 'Product liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or *failure to discharge a duty to warn* or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

Tenn. Code Ann. § 29-28-102(6) (emphasis added).

[6] For instance, in its appellate brief, Ford argues: "[I]n light of *Coffman*'s unambiguous holding that manufacturers have no duty to warn of the danger of another manufacturer's product, Ford is entitled to summary judgment on Plaintiff's failure to warn claim."

It was labeled as a Ford genuine part and included a Ford service part number. For clarity, we find that Ford is the manufacturer of the seat belt extender as that term is defined in the TPLA.

On appeal, Ford presses that the Tennessee Supreme Court's reasoning and holdings in *Coffman* foreclose Plaintiff's claims against it. Ford argues that if the defendants in *Coffman* were not legally required to warn of the danger of asbestos-containing products that had been added to those defendants' products after they were originally sold, then Ford cannot be liable on Plaintiff's failure to warn theory for injuries allegedly resulting from the use of the Ford Focus seat belt extender with Dorel's booster seat in the backseat of a Nissan Juke.

In examining how a defendant's "duty or liability" arises under the TPLA, our Supreme Court looked to section 29-28-105(a), which it termed "'[t]he key operative provision of the Act," and which states that a product must "be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Coffman*, 615 S.W.3d at 895 (quoting *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 689 (Tenn. 1995)). From this, the Court held that a manufacturer's duty to warn about the product's condition is triggered only when the product "was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Coffman*, 615 S.W.3d at 896.[7]

In *Coffman*, the plaintiffs argued that the Equipment Defendants' products were in a defective condition at the time they left the Equipment Defendants' control because they were designed to use asbestos-containing materials and provided no warnings about the dangers of asbestos. *Id*. In this case, Plaintiff argues that the seat belt extender was defective because the on-product warning label failed to adequately communicate the danger of misusing the extender with child restraints. Throughout her pleadings about the danger that Ford should have warned against, Plaintiff references other products, namely, booster seats. However, as our Supreme Court recognized, the TPLA's provisions "link a defendant's liability to the defendant's own product, not the product of another manufacturer." *Id*. at 897. The *Coffman* majority was not persuaded that the Equipment

---

[7] "'Defective condition' means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption[.]" Tenn. Code Ann. § 29-28-102(2).

"'Unreasonably dangerous' means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." Tenn. Code Ann. § 29-28-102(8).

Defendants' products were defective because they later were integrated with unsafe asbestos-containing replacement parts:

> The very definition of 'defective condition' states that the product's condition 'renders *it* unsafe for normal or anticipatable handling and consumption.' Tenn. Code Ann. § 29-28-102(2). The "*it*" refers to the manufacturer's own product. In this case, the "*it*" is the Equipment Defendants' original product, not the Equipment Defendants' product plus some later-included asbestos-containing material.

*Id*. (emphasis in original). Ford is not a booster seat manufacturer, nor did it make, design, or sell the Dorel booster seat Ethan used. Further, the undisputed expert testimony in the record shows that Ford's own product was safe for its normal, intended purpose of securing large adult passengers in the front seat of a Ford Focus. Plaintiff's experts did not identify any design defect or manufacturing defect with Ford's seat belt extender itself. Here, what made the extender unsafe and what created a dangerous condition was when the purchaser added, aftermarket, Dorel's booster seat and Nissan's Juke rear seat belt receptacles to the extender. Plaintiff claims that Ford had a duty to warn about the combined use of its seat belt extender with another manufacturer's product, Dorel's booster seat, as opposed to a duty to warn about some intrinsic feature of the actual extender. We find that *Coffman*'s explicit holding that "under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others" applies to the facts of this action and to Plaintiff's theory of Ford's liability. *Id*. at 899. We do not read *Coffman*'s holdings to be limited to cases about the post-sale integration of asbestos-laden component parts, as Plaintiff suggests. We have determined that Ford did not owe Plaintiff a legal duty to warn under the circumstances of this case. The existence of a legal duty is an essential element of the failure to warn claim under the TPLA. Therefore, the failure to warn claim articulated in the fourth amended complaint must be dismissed.

Finally, we have carefully contemplated Plaintiff's argument that Ford should have placed a warning on the subject seat belt extender against "the danger of misusing the extender to restrain a child" because such misuse was allegedly "anticipatable" and allegedly "known" to Ford. *Coffman* is instructive on this point as well. The plaintiffs in *Coffman* presented evidence at summary judgment that the Equipment Defendants not only anticipated that asbestos-containing products would be added to their products after the sale, but that they actually intended and specified that asbestos material be added to make those products useable. *See id*. at 897; 900–01 (Lee, J., dissenting). Still, when considering the plaintiffs' contentions "that manufacturers are liable for the *foreseeable* alterations, changes, improper maintenance, or abnormal use of their products," the Court's majority ruled that the Equipment Defendants could not be liable on a failure to warn theory. *Id*. at 897–98 (emphasis in original). Here, Ford's seat belt extender was useable on its own for

its intended purpose, and it was never intended to be combined with another product like Dorel's booster seat or Nissan's Juke rear seat belt system.

Based on *Coffman*'s guidance and the relevant TPLA provisions, we conclude that Ford did not have the legal duty in this case to warn about the misuse that arose from the combination of its product with the products of other manufacturers. For this reason, Ford is entitled to summary judgment on Plaintiff's failure to warn claim asserted in her fourth amended complaint. We reverse the trial court's April 19, 2023 order. Our opinion should not be read as a ruling on what may be the best language for Ford to place on its seat belt extender warning labels going forward.

## V. CONCLUSION

For the foregoing reasons, we reverse the trial court's April 19, 2023 order denying Ford's motion for relief from the trial court's summary judgment orders. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellee, Sarah Elizabeth Woodruff.

_____
JOHN W. McCLARTY, JUDGE